In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1953

THOMAS BROWN,

*Plaintiff-Appellant,*

*v.*

COUNTY OF COOK, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 617—**Sharon Johnson Coleman**, *Judge*.

ARGUED SEPTEMBER 30, 2011—DECIDED OCTOBER 25, 2011

Before EASTERBROOK, *Chief Judge*, and POSNER and
WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*.   Thomas Brown, a sergeant in
the Cook County Sheriff's Office, was passed over for
promotion to lieutenant. His suit, filed under 42
U.S.C. § 1983 primarily against the then-Sheriff, Demo-
crat Michael F. Sheahan (the only defendant whom
we need to discuss), charges that he was passed over
because he's a Republican, didn't contribute to Sheahan's

campaign fund in 1998, and voted for Sheahan's Republican opponent that year, and that by thus discriminating against Brown on the basis of his political affiliation Sheahan infringed his freedom of speech. See, e.g., *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 68-76 (1990). Sheahan ran for re-election in 2002 and again Brown neither attended any of his fundraisers nor contributed to his campaign fund. The district judge granted summary judgment for the defendants.

The parties haggle over the continued applicability of "motivating factor" analysis to suits charging violations of First Amendment rights. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). In a decision handed down shortly after the oral argument of this appeal, we ruled that it remains applicable to such suits. *Greene v. Doruff*, No. 10-3497, 2011 WL 4839162 (7th Cir. Oct. 11, 2011). If Brown presented evidence at the summary judgment phase of the litigation that could convince a reasonable jury that his political affiliation was a motivating factor in his being passed over, the burden would shift to Sheahan to present evidence that could convince a reasonable jury that Brown's political affiliation was not a "but for" cause of the discrimination. (Sheahan doesn't argue that denying Brown promotion solely for political reasons might come within one of the exceptions to the First Amendment's bar against political discrimination in public employment.)

To restate the standard of *Mt. Healthy* in simpler terms, if Brown can prove that he would have been denied promotion because of his political affiliation alone, then

to avoid an adverse judgment Sheahan would have to show that even so Brown would have been denied promotion for some other reason, in which event his political affiliation had no causal significance. If Sheahan can meet that burden, it is as if he had told Brown "I can't promote you because there's no opening for another lieutenant, but if there were I still wouldn't promote you, because you made a donation to my opponent five years ago." There would be no constitutional violation because if Sheahan was being truthful Brown would not be worse off as a result of his political affiliation than if he'd contributed to Sheahan's campaign instead.

For two years, beginning in 2003 and ending a few months before his voluntary retirement in 2005 (the year before Sheahan retired as Sheriff), Brown was on a list of 16 police officers eligible to be promoted to lieutenant. Five were promoted during that two-year period; 11 including Brown were not. Of the 5 promoted, 3 had contributed to Sheahan's campaign fund and 2 had not. Of the 11 denied promotions, 4 had contributed to the fund and 7 (including Brown) had not. The average contribution of the 3 applicants who contributed and were promoted was $557; the average contribution of the 4 who contributed but were not promoted was $595—as a group the heavier contributors were treated worse! Brown concedes that he had not been asked to contribute and does not allege (and indeed disclaims) that he was told he had to contribute money to Sheahan's campaign fund or otherwise assist in Sheahan's campaign if he wanted to be promoted.

Five years before the promotion list was posted, Brown had donated $100 to the campaign of Sheahan's Republican challenger and posted five signs advertising that candidate. Apparently these were Brown's only contributions to the Republican candidate's 1998 campaign besides voting for him; Brown's wife was not even aware of his participation in the campaign. He seems not to have participated in any fashion in any other recent campaign. The Cook County Sheriff's Office has some 7,000 employees, and Sheahan swears that he never met Brown or had even heard of him before this lawsuit. Sheahan's deputies who were involved in promotions knew Brown but not that he was a Republican. Brown contests all this but produced no admissible evidence to contradict the sworn denials of Sheahan and the members of Sheahan's senior staff. Brown cannot satisfy his burden of showing that his political affiliation was a motivating factor in his being passed over for promotion if he can't even show that people who decided or advised on the decision were aware of his political affiliation.

Much of the evidence tendered by Brown in an effort to fend off summary judgment was inadmissible hearsay. We'll give just one example. Brown alleged that "a representative of the Communications Section [of the Sheriff's Office] told me that Commander Palcu [a senior officer, close to Sheahan] ran my license plate" (that is, did a computer search to determine whether Brown had a criminal record). We don't see how, even if the allegation were true, it would help Brown's case, as it would not be evidence of political animosity to him. And in

any event its evidentiary value would be nil unless what the "representative" told Brown was true—and Brown was forbidden by the hearsay rule to attest to its truth. See Fed. R. Evid. 801(c). Although there are many exceptions to the rule, the only one he invokes is the exception for statements by the opposing party (that is, admissions) or the party's agent—but in the latter case the statement must concern "a matter within the scope of the agency." Fed. R. Evid. 801(d)(2)(D). There is no indication that the job of the "representative of the Communications Section" involved conducting computer searches or monitoring Palcu's activities.

Much of the evidence that Brown tendered in the district court was irrelevant, such as that another senior staff member, when Brown asked him about being promoted to lieutenant, told him "call your clout." Brown could of course testify that the officer really did say that to him, and we are certainly happy to learn that bit of Chicago argot, previously unfamiliar to us. But all that "clout" means in the expression "call your clout" is "some person of influence who will back your candidacy." The "clout" need not be a Democratic politician; he or she could be a relative of Sheahan, or someone for whom Sheahan might have wanted to work after retiring as Sheriff, or Sheahan's pastor, or for that matter Bo Derek, who if indeed instrumental in persuading the Illinois legislature to close down Illinois's only horse slaughterhouse, see *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 551, 559 (7th Cir. 2007), might be able to persuade the Sheriff of Cook County to promote a sergeant to lieutenant.

Brown testified that one of the officers promoted ahead of him was promoted only after he "called his clout," but the "clout" in question was the officer's former commander, who as far as appears was willing to support his former subordinate's candidacy because the subordinate had done a good job working for him. That wouldn't even be "clout" in its usual pejorative sense; but all that matters is that it wouldn't be political clout. Another officer was promoted ahead of Brown because, Brown alleges, Sheahan knew the man and had a high opinion of him, and whether that high opinion was justified is likewise irrelevant to this litigation, as there is no indication that it was because of the officer's politics.

Brown makes much of allegations of misconduct leveled against the one woman who was among the 5 officers promoted to lieutenant ahead of him. The allegations are lurid; they include an incident in which she is alleged to have had sex with her boyfriend in a hot tub in her backyard in view of the neighbors. Most of the allegations (including that one) concern conduct in which she engaged after she was promoted to lieutenant, and they cast only a faint light on the motivations for promoting her instead of Brown, though a serious allegation—conversion of department property—was of misconduct before she was promoted. But even if she was less well qualified than Brown whether for ethical or other reasons (and let's assume she was), it doesn't follow—it doesn't begin to follow—that Sheahan's motivation for promoting her instead of Brown (she filled the last vacancy that came open during

his two-year eligibility period) was political. True, she contributed money to Sheahan's campaign, but we know that the average contribution of the officers who were not promoted exceeded that of the officers who were.

Lacking evidence that she was unqualified ex ante, Brown tosses in the alternative argument that she was given preferential treatment because she's a woman, treatment that he says is a form of unlawful discrimination because there was no basis for the Sheriff's engaging in affirmative action in favor of women. But this is not a sex discrimination case, so it is no more material that she was promoted illegally because of her sex (if she was) than that she was promoted even though she was less qualified than Brown (as we are assuming), or because she had clout and he did not—unless her "clout" consisted of her not being a Republican; but it seems instead to have derived from her having been the sister-in-law and former police partner of one of Sheahan's top advisers.

Brown argues that once he carries his initial burden of showing that a reasonable jury could find that the defendant was committed to denying him promotion on the basis of his political affiliation (not that he has carried it—he hasn't), Sheahan shouldn't be permitted to argue that he would have passed over Brown for some other, albeit unrelated, reason if that reason was improper. That's wrong. If all that's charged is discrimination on political grounds, *any* nonpolitical ground that the defendant can prove would have caused the discrimination regardless of the presence of political hostility

will preclude liability. Cf. *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 657 (7th Cir. 1991) (en banc).

Brown did ask the district judge to let him amend his complaint to add a claim of sex discrimination in violation of the equal protection clause; and if the judge had allowed the amendment, Sheahan could no longer have argued that the suit should be dismissed because his preferential treatment of the female officer was at worst based on her sex rather than on Brown's politics. But the judge cannot be faulted for having denied the motion as untimely, coming as it did 56 months after Brown filed suit and 13 months after Sheahan made the statements on which Brown wanted to base a claim of sex discrimination.

The most amusing evidence that Brown tendered to support his claim of political discrimination consisted of proof that he had several times made accurate predictions of upcoming promotions before they were publicly announced—as verified by his having placed an ad in the *Chicago Tribune* congratulating the promoted officers before their promotions were announced and by his mailing to himself a sealed letter, setting forth his predictions, to be opened only by the judge in camera. If anything, Brown's ability to predict promotions suggests that they are based on visible criteria—such as being well regarded by one's superiors—rather than on the frequently secretive operation of clout.

Brown's most interesting evidence consists of a number of written admissions made by Sheahan in response to requests for admissions served on him by

Brown's lawyer. Typical were the following: "Admit that Tom Brown did not make any political contribution to your campaign." "RESPONSE: Admitted to the best of my knowledge. I have no independent recollection of contributions as to my campaigns." "Admit that Tom Brown did not attend any of your political campaign fundraisers." "RESPONSE: Admitted to the best of my knowledge." But although confusingly worded, the responses were not admissions of the truth of the assertions that Brown wanted Sheahan to admit. They were merely admissions that Sheahan could not deny on the basis of his own knowledge that Brown had not contributed to his campaign or attended his fundraisers, because he had had many contributors, and many persons attended his fundraisers, and the requests for admissions were served on him in 2010, eight years after he'd last run for Sheriff. The phrase, in the first of the admissions we quoted, "I have no independent recollection of contributions as to my campaigns," indicates that he wasn't admitting anything except that he didn't remember the information sought—especially contributions that were *not* made to his campaign funds.

The briefs are long and we have given only a glimpse of their contentious contents. But we have hit the high spots, and for the rest are content to rely on the district court's opinion.

AFFIRMED.