In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1846

KEVIN LOUDERMILK,

*Plaintiff-Appellant*,

*v.*

BEST PALLET COMPANY, LLC, and DAN LYONS,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 08 C 6869—**Philip G. Reinhard**, *Judge*.

ARGUED OCTOBER 6, 2010—DECIDED FEBRUARY 18, 2011

Before EASTERBROOK, *Chief Judge*, and WOOD and EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Kevin Loudermilk worked at Best Pallet Company, where his principal task was to disassemble pallets and stack the wood for reuse. Multiple employees worked simultaneously on a "tear-down machine." Laborers at one end broke pallets into pieces, which were passed to others for stacking. Loudermilk contends that each side of the machine in

the stacking area should have had at least two workers, but that Best Pallet assigned its staff so that two or more Hispanic workers were on one side, while Loudermilk (who is black) worked alone on the other. He could not keep up and was criticized for allowing boards to fall, and when he complained about the lack of help the Hispanic workers hurled racial epithets. He complained in turn about these taunts; management did nothing, Loudermilk says. (All of this opinion's factual narrative comes from Loudermilk's allegations and evidence, which we must accept for current purposes.)

During April 2006 Loudermilk lodged several complaints with management. He began to talk about filing a charge with the EEOC. On April 25 he took some pictures of the work area, apparently to show the agency (and, if necessary, a court) how the tear-down machine was set up and why it needed two stackers on each side. Dan Lyons, a supervisor, told him to stop taking pictures. When Loudermilk reiterated his concerns about being treated differently from the Hispanic workers, Lyons told him: "Put it in writing." Loudermilk did just that and handed Lyons a note the next day. Lyons fired him on the spot. Loudermilk then filed a charge of discrimination with the EEOC, which concluded that Best Pallet probably had engaged in racial discrimination and retaliation. Best Pallet declined to settle the charge during the administrative process, however, so the EEOC sent Loudermilk a right-to-sue letter, and he sued.

Title VII of the Civil Rights Act of 1964 forbids retaliation against anyone who "has opposed any practice

made an unlawful employment practice by this sub-chapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e–3(a). See generally *Thompson v. North American Stainless, LP*, No. 09–291 (U.S. Jan. 24, 2011). As the case comes to us, Loudermilk has a single claim for relief: that Best Pallet fired him because he "opposed" its practice of favoring Hispanic over black workers. He makes this contention under the "direct" method, as opposed to the burden-shifting "indirect" method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its successors.

The district court granted summary judgment for defendants, concluding that Loudermilk lacks evidence that his opposition to racial or national-origin discrimination caused his discharge. As the court saw things, Loudermilk's only evidence is timing: he handed Lyons a note and was fired. Lyons had not read the note, so he did not know that it contained a complaint about racial discrimination. Anyway, the judge thought, a temporal sequence does not show causation. *Post hoc ergo propter hoc* is the name of a logical fallacy, not a means to prove causation.

One problem with this approach is that it takes defendants' view of the evidence rather than Loudermilk's. Best Pallet insists that Lyons did not read the note before firing Loudermilk, but Lyons himself says that he did read it (though Lyons maintains that Loudermilk delivered the note some days before being fired). When

ruling on a motion for summary judgment, the party opposing the motion gets the benefit of all facts that a reasonable jury might find. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A jury would be entitled to believe that Lyons read the note. Indeed, a jury would be entitled to find that Lyons knew the content of the note whether he read it or not. Only the day before, Loudermilk had made an oral complaint about racial discrimination, and Lyons had told him to "[p]ut it in writing." What did Lyons think was in the note he received the next day? An invitation to a birthday party?

Best Pallet says that it fired Loudermilk not because of the note's content, but because he had taken pictures of the work site, in violation of company policy. But it did not give that explanation to Loudermilk—or for that matter the EEOC. Best Pallet told the agency that it let Loudermilk go as part of a reduction in force (though Loudermilk's name was not on a list of workers that had been prepared for that purpose). In court it abandoned that explanation and contended that Loudermilk had resigned, or that his departure was a "mutual decision." Since Loudermilk says that he did not resign, that explanation can't prevail at the summary judgment stage. This led to the "fired for photography" contention, which is problematic not only because the no-photography policy may have been cooked up after the fact, but also because it comes close to *conceding* retaliation. If the reason that Loudermilk snapped the photos was to bolster his claim of discrimination, then forbidding

picture-taking looks a lot like an attempt to block the gathering of evidence during an investigation.

We don't say that §2000e–3(a) allows workers to break locks and rifle managers' desk drawers in search of evidence; our point is that a "policy" that may have been devised to curtail an investigation is not the sort of neutral rule that would adequately explain a discharge. The Civil Rights Act of 1964 does not require employers to have "just cause" for sacking a worker, see *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557 (7th Cir. 1987), but an employer who advances a fishy reason takes the risk that disbelief of the reason will support an inference that it is a pretext for discrimination. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146–49 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

The discharge's timing also could support an adverse inference by a reasonable trier of fact. Suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment. See *Lewis v. Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). Occasionally, however, an adverse action comes so close on the heels of a protected act that an inference of causation is sensible. See, e.g., *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001) ("very close" temporal proximity can suffice); *Casna v. Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009); *Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004); *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796–97 (7th Cir. 1997). Deciding when the inference

is appropriate cannot be resolved by a legal rule; the answer depends on context, just as an evaluation of context is essential to determine whether an employer's explanation is fishy enough to support an inference that the real reason must be discriminatory. The district court's apparent belief that timing *never* supports an inference of causation is untenable. The closer two events are, the more likely that the first caused the second. We think that an inference of causation would be reasonable here. A jury, not a judge, should decide whether the inference is appropriate.

Defendants contend that Loudermilk's complaints were too vague, but §2000e–3(a) does not have a vagueness exception. The question is whether the employee opposed an unlawful employment practice—at least, one that the employee reasonably believed to be unlawful. See *Fine v. Ryan International Airlines*, 305 F.3d 746, 752 (7th Cir. 2002). (Frivolous complaints are not protected. See *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890 (7th Cir. 2004).) The evidence in this record would allow a reasonable person in Loudermilk's position to conclude that Best Pallet favored Hispanic over black workers with respect to material conditions of employment, condoned a racially hostile workplace, and thus violated Title VII. Loudermilk's protests were protected. Whether Loudermilk was *right* in his belief does not matter.

The judgment is reversed, and the case is remanded for trial.