In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3387

SVETLANA ARIZANOVSKA,

*Plaintiff-Appellant,*

*v.*

WAL-MART STORES, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 09 C 1404—**Richard L. Young,** *Chief Judge.*

ARGUED FEBRUARY 14, 2012—DECIDED JUNE 12, 2012

Before EASTERBROOK, *Chief Judge*, BAUER, *Circuit Judge*, and CHANG, *District Judge.**

BAUER, *Circuit Judge.* Svetlana Arizanovska filed an action against her employer, alleging that she was discriminated against because of her pregnancy and her

* The Honorable Edmond E. Chang, District Judge of the United States District Court for the Northern District of Illinois, sitting by designation.

national origin. She added state-law claims of intentional and negligent infliction of emotional distress. The district court granted summary judgment against her on both her federal and state-law claims. We affirm.

## I. BACKGROUND

Svetlana Arizanovska was born in Macedonia and was a former employee of Wal-Mart Stores, Inc. ("Wal-Mart"). There, she worked part-time, three days a week as a stocker on the overnight shift. A stocker is expected to stock, zone, process returns, and clean the store. Since stocking requires lifting heavy items, there is a requirement that stockers be able to lift up to 50 pounds. The assistant manager, Nyra Buckner, was Arizanovska's primary supervisor and was in charge of providing Arizanovska with her job assignments. Arizanovska's supervisor during the night shift was Eddie Houston.

In November 2008, Arizanovska learned that she was pregnant. After experiencing some vaginal bleeding and spotting, she went to her doctor three times in January. Sometime after January 12, she told Buckner that her doctor told her that she could not lift more than 20 pounds. Buckner then assigned Arizanovska to work in the baby food and toothbrush aisles.

Arizanovska experienced some bleeding again on January 24, 2009. The next day, Buckner assigned her to work in Aisle 3. Arizanovska complained to Houston about being assigned to that aisle.

On January 25, she saw some more spotting, and on January 27, while working at her other job, she experi-

enced bleeding yet again. At this point, Arizanovska went immediately to her doctor and learned that she had miscarried.

In May 2009, Arizanovska discovered that she was pregnant again, and around May 16, provided Wal-Mart with a medical restriction; she was not to lift more than 10 pounds. As a result of her medical restriction, Arizanovska could no longer perform the essential lifting functions of her position as a stocker. Arizanovska asked that she be transferred to a position where she only folded clothes. But no such position exists; in fact, employees who fold clothes are also expected to download stock.

On May 18, personnel manager Luann Christy consulted with human resources manager Curtis Mace; they agreed that under Wal-Mart's Accommodation in Employment Policy, Arizanovska would have to take a leave of absence because she was unable to perform her job duties. Wal-Mart's Accommodation in Employment Policy states:

> If you have a medical condition that is not a disability, but which prevents you from performing your job, including pregnancy, you may be eligible for a job aid or environmental adjustment under this policy, a leave of absence under the Leave of Absence Policy, or you also may request transfer to another open position under the Associate Transfer Policy. . . .
>
> Job aid or environmental adjustment means a change in practices or the work environment which is both easily achievable and which will have no negative

impact on the business. This type of accommodation does not include creating a job, light duty or temporary alternative duty, or reassignment.

On May 20, Arizanovska told Christy that she would not take a leave of absence and that she wanted "light duty"; specifically, she wanted to fold clothes. Christy told Arizanovska that she could not fold clothes and that she would have to take a leave of absence until her doctor released her from her medical restrictions that prevented her from performing her job duties.

Arizanovska did not return to work at Wal-Mart after May 20, 2009, and a little over a month later she miscarried again. She filed a lawsuit against Wal-Mart shortly thereafter.

The suit claimed that Wal-Mart had violated her rights under Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act. She complained that Wal-Mart failed to accommodate her under its Accommodation in Employment Policy because of her pregnancy and/or national origin. She also claims that Wal-Mart retaliated against her for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Finally, Arizanovska brought several state-law claims against Wal-Mart—intentional and negligent infliction of emotional distress, negligent supervision, and liability for its employees' actions under the theory of respondeat superior. The district court granted summary judgment against Arizanovska on all her federal and state-law claims. She timely appealed that judgment.

## II. DISCUSSION

We must determine whether the district court erred in granting summary judgment in favor of Wal-Mart on Arizanovska's claims. We review de novo a district court's grant of summary judgment, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party—here, Arizanovska. *Hall v. Nalco Co.*, 534 F.3d 644, 646 (7th Cir. 2008). We have previously held that "a factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

We turn now to Arizanovska's claims, taking each theory of recovery in turn.

### A. Pregnancy and National Origin Discrimination

Arizanovska claims that she was forced out of her job at Wal-Mart as a result of pregnancy and national origin discrimination. The district court disagreed, finding that she did not make out a prima facie case of discrimination. Arizanovska may prove her discrimination case under either the direct or indirect method, *Weber v. Univ. Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010), but has elected to pursue her discrimination case only under the indirect proof method.

Under the indirect method, Arizanovska is required to produce evidence establishing a prima facie case of discrimination: (1) that she was a member of a protected class; (2) that she was performing her job satisfactorily;

(3) that she suffered an adverse employment action; and (4) that Wal-Mart treated a similarly-situated individual outside Arizanovska's protected class more favorably. *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009). If Arizanovska satisfies those elements, the burden then shifts to Wal-Mart to identify a legitimate, nondiscriminatory reason for the action taken. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). And if Wal-Mart advances a nondiscriminatory reason for requiring Arizanovska to take a leave of absence, summary judgment would only be erroneous if Arizanovska produced evidence that the proffered reason was a pretext for improper discrimination. *Id*.

Wal-Mart agrees that Arizanovska is a member of a protected class but argues that Arizanovska cannot satisfy the other three prongs of the prima facie case. Summary judgment is appropriate if Arizanovska cannot demonstrate any one element of the prima facie case, so we only need address the fourth prong, an obvious loser. *See Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007).

In order to meet the fourth prong of the prima facie case, Arizanovska must identify a similarly-situated employee outside her protected classes who was treated more favorably. *Shinseki*, 578 F.3d at 609. Arizanovska has not done this. To support both her pregnancy and national origin discrimination claims, Arizanovska contends that two pregnant, African-American employees were treated more favorably—i.e., that because of their pregnancies and race they were allowed to work in aisles with less heavy items. But the evidence contradicts that. First,

neither of those employees was assigned to light-duty work. Second, neither employee provided Wal-Mart with temporary medical restrictions that prevented them from doing their job duties. Because there is no basis to conclude that those employees were treated more favorably, she cannot make out a prima facie case for discrimination.

Moreover, with respect to her pregnancy discrimination claim, Arizanovska has not identified a similarly-situated employee *outside* her protected class—i.e., non-pregnant. Both of the employees she identified were pregnant, and so we cannot infer pregnancy discrimination on that basis because there is no comparison between the treatment of pregnant employees versus non-pregnant employees. The purpose of the "similarly-situated" comparator is to ensure that all other variables are discounted so that discrimination can be inferred. "If an employer takes an action against one employee in a protected class but not another outside that class, and all else is equal between the comparators, we can infer discrimination, at least provisionally at the prima facie stage of the analysis." *Silverman v. Bd. of Educ.*, 637 F.3d 729, 742 (7th Cir. 2011). The "similarly-situated" inquiry is a "flexible, common-sense one," *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007), but it at least requires that the plaintiff name a comparator outside her protected class.

Arizanovska also argues that Wal-Mart's Accommodation Policy gives preferential treatment to an employee who is injured outside of work over a pregnant woman whose condition was attained outside of work. That

argument, however, is really a challenge to the policy itself and is not applicable when proving a discrimination case under the indirect method. And anyway, Title VII does not require that sort of accommodation. Wal-Mart did not create a light duty position for Arizanovska because, according to its Accommodation Policy, it would not create that position for any non-pregnant employee who was under medical restrictions. That policy is consistent with Title VII's requirements. *See Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 548 (7th Cir. 2011) ("[A]n employer is not required to provide an accommodation to a pregnant employee unless it provides the same accommodation to its similarly situated non-pregnant employees.").

In short, because Arizanovska has not shown that similarly-situated employees outside of her protected classes were treated more favorably, she has failed to establish a prima facie case of racial or national origin discrimination under the indirect method. We find, as the district court did, that summary judgment was proper. We need not reach the issue of pretext, as plaintiff has failed to state a prima facie case of discrimination. *See Cowan v. Glenbrook Sec. Serv., Inc.*, 123 F.3d 438, 445 (7th Cir. 1997).

## B. Retaliation

Arizanovska contends that Wal-Mart retaliated against her after she filed her EEOC charge of discrimination. Unlike her discrimination claim, which she pursued under the indirect method, Arizanovska now relies exclusively

on the direct method. That means she can overcome summary judgment only by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) the protected activity is causally related to the adverse employment action. *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F. 3d 664, 677 (7th Cir. 2011).

There is no question here regarding the first element of the prima facie case. Arizanovska filed an EEOC charge of discrimination—clearly a protected activity under Title VII. The second element, however, requires some discussion. Arizanovska identifies her adverse employment action as Wal-Mart placing her on an unpaid leave of absence. But the district court determined that this was not an adverse employment action.

We have defined adverse employment quite broadly. *McDonnell v. Cisneros*, 84 F.3d 256, 258-59 (7th Cir. 1996). But for an employment action to be adverse, "the challenged action must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)). We have noted that materially adverse employment actions can be categorized into three groups of cases involving: (1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes

to the employee's work conditions including subjecting her to "humiliating, degrading, unsafe, unhealthful, or otherwise significant negative alteration in [her] work place environment." *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002) (internal citations and quotations omitted).

Being forced to take an unpaid leave of absence certainly falls into the first category of material adverse employment actions. Yet Wal-Mart argues that its offer of an unpaid leave of absence was not materially adverse because it was consistent with its Accommodation Employment Policy; the choice was either terminate Arizanovska or place her on an unpaid leave of absence because there were no other open positions on the overnight shift and, according to its Accommodation Employment Policy, Wal-Mart does not create light duty positions for *any* employee. That may be well and true; however, that rationale ignores the reality of the situation. The fact remains, Arizanovska went from a part-time employee to unpaid and temporarily unemployed. Wal-Mart has not cited any case—nor are we aware of any—in which an employment action was found not to be materially adverse merely because it was consistent with a broader company policy. In fact, such a finding would allow companies to retaliate, and even discriminate with impunity so long as the employment action complained of was consistent with some internal policy; a company's employment policy should not be used to shield liability in that way. Arizanovska went from a part-time employee to unpaid and temporarily unemployed. That certainly is not a promotion; nor is it a

continuation of the status quo. And the mere fact that it was the result of Wal-Mart's Accommodation Policy does not make it sting any less. We find that she has suffered a materially adverse employment action and has satisfied the first two elements of a prima facie retaliation case. But she is a loser on the third element.

To establish the third element—i.e., a causal relation—she must show that her EEOC charge was a "substantial motivating factor" in Wal-Mart's decision to require her to take an unpaid leave of absence. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011). Here, Arizanovska points to an e-mail correspondence between two of Wal-Mart's supervisors—Christy (Personnel Manager) and Mace (Human Resources Manager). In the e-mail exchange, Christy explained to Mace that Arizanovska had filed legal action against Wal-Mart following her first pregnancy. Christy then further explained that Arizanovska was pregnant again and now had a medical restriction that prevented her from lifting more than 10 pounds. Mace responded that Arizanovska would have to take a leave of absence until she could perform her essential job functions. If this e-mail seems innocuous, it is because it is. Mace's and Christy's statements do nothing more than explain Wal-Mart's Accommodation Policy, which would apply regardless of whether Arizanovska filed a claim. There is no indication that Arizanovska's EEOC charge was a factor, much less a substantial motivating factor, for Wal-Mart to require her to take a leave of absence. We have no basis from which to infer that Wal-Mart's motive was actually retaliatory. The

district court properly granted summary judgment against Arizanovska's retaliation claim.

### C.  State-law Claims

We find that the district court did not err in granting summary judgment against Arizanovska on her remaining state-law claims.

### III.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's decision to grant summary judgment in favor of the defendant.