NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 15, 2013[*]
Decided March 18, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 12-1469

| | |
|---|---|
| BETTYE A. LOVING,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 08-C-881 |
| JACOB J. LEW,<br>Secretary of the Treasury,<br>    *Defendant-Appellee.* | William E. Callahan, Jr.,<br>*Magistrate Judge.* |

**O R D E R**

Bettye Loving appeals the district court's grant of summary judgment against her in this lawsuit involving claims of employment discrimination by the Internal Revenue Service. Because Loving fails to identify evidence from which a jury could infer improper motive, we affirm the judgment of the district court.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

We recount the admissible evidence in the light most favorable to Loving. *See Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir. 2011). Loving was employed by the IRS for about 20 years. In 2000 she was appointed assistant to the territory manager of the IRS's Large and Mid-Size Business Division in Waukesha, Wisconsin. But when the tasks of the position were eliminated two years later, Loving assumed the duties of a secretary in one of the Waukesha office's four examination groups (though she retained her official title). In this role, she managed the group's computer systems, handled mail, took notes during meetings, and assisted revenue agents. Loving worked in this capacity—apparently without incident—until 2005, shortly before Cynthia Fox took over as manager of Loving's group.

Loving was already on poor terms with Fox when she was confronted by Fox and two other employees who pressured her to sign a document detailing her job duties. Loving thereafter asked Fox to communicate with her only in writing. Fox generally acquiesced to this request, and the many emails in the record memorialize a series of incidents that culminated in Loving's firing from the IRS. In October 2005, for example, after Loving alerted Fox by email that she would be leaving for the day at noon, Fox notified her that all leave requests should include the type, dates, and amount of leave and instructed her to make any future short-notice requests by telephone or in person. Over the next several months, Fox issued Loving three "counseling memorandums" for failing to follow these instructions.

Loving filed an EEOC charge in June 2006, alleging retaliation, harassment, racial discrimination, and hostile work environment. Fox, she said, had bombarded her with work and impossible tasks, issued unwarranted counseling memorandums, denied her leave requests, and improperly reported her as absent without leave. After that charge, Loving's working relationship with Fox continued to deteriorate. A September request by Fox that Loving transfer some of the group's materials from one file cabinet to another touched off a confusing chain of emails, in which Loving questioned the purpose of the assignment, maintained that she could not find one of the cabinets, and accused Fox of singling her out for maintaining sensitive documents in an unsecured cabinet. A similar scenario unfolded later that month when Fox's request that Loving submit an office-supply order devolved into a debate on office procedures.

Loving was finally fired in early 2007 based on a letter from her territory manager, Ronald Rossi, citing 32 infractions. These infractions fell under two categories. The first alleged 28 instances in which Loving failed to follow managerial directions, including neglecting to submit supply orders, missing mandatory meetings, and taking unapproved leave. The second alleged that Loving had sent "unprofessional, inappropriate, and/or disrespectful messages" to Fox. Loving appealed to the Merit Systems Protection Board,

which upheld her removal, finding that most—but not all—of the infractions were supported by evidence.

Loving then filed this lawsuit under Title VII of the Civil Rights Act of 1964, claiming that she was harassed, discriminated against, and terminated because of her race and EEOC activity. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Fox, she asserted, had subjected her to a hostile work environment by assigning her menial and impossible tasks, enacting a leave policy that applied only to her, inappropriately confronting her, fabricating allegations that she was insubordinate and absent without leave, and failing to issue her an annual performance evaluation.

The district court granted summary judgment for the Secretary, concluding that Loving's hostile work environment claim failed because she had not identified any evidence establishing that Fox's treatment of her had a racial character or purpose. The court found, too, that Loving failed either to identify direct evidence of racial discrimination or establish a prima facie case through indirect evidence. Specifically, the court pointed out that Loving had failed to identify evidence that she was treated worse than a similarly situated non-black employee. Indeed, because Loving was the only employee in Fox's group acting as a group secretary, and the only employee who had refused to speak to Fox (which would "put[] a strain on even the best working relationship"), the court noted that there were no similarly situated employees. Loving's retaliation claim failed, too, because she did not present enough evidence linking Fox's allegedly retaliatory conduct to her EEOC complaints.

On appeal Loving generally asserts that she presented sufficient evidence for a jury to infer that Fox subjected her to a hostile work environment on account of her race. Because she was the only African-American employee in Fox's group, she maintains that a jury could reasonably find that Fox's poor treatment of her was racially motivated. But although a defendant's conduct need not be explicitly racial to support a hostile work environment claim, to survive summary judgment a plaintiff must produce evidence that the conduct was at least motivated by race. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Loving does not dispute the district court's finding that the record lacks any evidence that Fox bore ill will toward her because of her race, and the fact that she was the only black employee in her group is insufficient to support that inference. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).

Loving also maintains that summary judgment was improper on her retaliation claim because, she says, she was targeted for removal shortly after she filed her EEOC charge at an unspecified date in early or mid-June 2006. A jury could infer as much, Loving urges, based on Fox's documentation of her performance issues and failure to complete her

annual evaluation by June 30. But even if these events constitute adverse employment actions, they did not come "so close on the heels of a protected act that an inference of causation is sensible." *Loudermilk v. Best Pallet Co.*, LLC, 636 F.3d 312, 315 (7th Cir. 2011); *see Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action."). Moreover, because several incidents predating Loving's EEOC charge supported her removal, this is not the "rare case in which temporal proximity, without more, established a causal connection." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006); *see Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005) (suspect timing did not support causal link between plaintiff's protected activity and disciplinary action where "numerous incidents brought [plaintiff's] professionalism and ability to serve as an affirmative action coordinator into question").

Loving also asserts for the first time in her reply brief that summary judgment was improper on her race-discrimination and retaliation claims because she presented sufficient evidence that she was similarly situated to a white employee who did not file EEOC charges and was treated better than herself. But this contention comes too late, as Loving failed to raise it in her opening brief. *See Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 529 (7th Cir. 2003).

AFFIRMED.