In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3562

ROGER L. PEELE,

*Plaintiff-Appellant,*

*v.*

CLIFFORD BURCH, individually and as
Portage Police Department Chief; LARRY JOLLEY,
individually and as Portage Police Department
Assistant Chief; and the CITY OF PORTAGE,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 09-cv-00138—**Paul R. Cherry**, *Magistrate Judge.*

ARGUED APRIL 1, 2013—DECIDED JULY 9, 2013

Before BAUER, KANNE, and TINDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Roger L. Peele was a detective
in the Portage Police Department. In his spare time, he
was active in local politics. Peele supported Steve
Charnetzky's Democratic primary campaign for the
mayorship of Portage, Indiana. Charnetzky lost, and

Peele spoke about the loss to a local reporter. Peele's comments were published the next day. The day after that, Peele was transferred out of the Detective Bureau. Peele sued, claiming that he was transferred in retaliation for his comments. The district court granted summary judgment in favor of the defendants. For the reasons that follow, we reverse.

## I. BACKGROUND

The facts of this case are ferociously disputed. For now, we will try to stay above the fray. To the extent possible, we will begin by discussing only those facts that everybody agrees on. Once we move into disputed territory, we will construe the facts in the light most favorable to the plaintiff. *See Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012).

The plaintiff, Roger L. Peele, worked for the Police Department of the City of Portage, Indiana. Except for a one-year term as Portage's Chief of Police, Peele served from 1992 until 2007 in the department's Detective Bureau.

Spring 2007 was election season in Portage. Doug Olson, the city's incumbent mayor, was stepping down, and two candidates sought the Democratic party's nomination to replace him. The first was Olga Velazquez. The second was Steve Charnetzky. Peele supported Charnetzky and worked on his campaign during off-duty hours.

The voters went to the polls on May 8, 2007. Velazquez won. Peele spent the evening at Charnetzky's campaign

headquarters, and, unsurprisingly, he was frustrated with his candidate's loss. He vented his frustrations to a reporter for the *Northwest Indiana Times*. Peele criticized the *Times* for what he thought was unfair coverage of the race and also criticized Porter County Sheriff David Lain for endorsing Velazquez. Peele also said, apparently referring to Sheriff Lain, "He won't get any support here." The following day, May 9, 2007, the *Times* published Peele's comments as part of its election coverage. The next day, May 10, 2007, Peele was called into the Chief of Police's office for a meeting. Chief of Police Clifford Burch, Assistant Chief of Police Larry Jolley, and Detective Captain Terry Swickard all attended. Chief Burch read a prepared statement stating that Peele would be reassigned from the Detective Bureau to the more desk-bound position of "Station Duty Officer."

In response, Peele sued Chief Burch, Assistant Chief Jolley, the Portage City Police Department, and the City of Portage. Peele claimed that (1) he was demoted and constructively discharged without due process; (2) the defendants retaliated against him for supporting Charnetzky, in violation of the First Amendment; and (3) the defendants defamed him. The defendants countersued for malicious prosecution and abuse of process. The parties consented to disposition by a magistrate judge. (R. 17.)

On February 28, 2012, the district court issued an order granting summary judgment to the defendants on Peele's due process, First Amendment, and defamation claims. *Peele v. Burch*, No. 09-CV-138-PRC, 2012 WL 693570,

at *5-11 (N.D. Ind. Feb. 28, 2012). The district court also granted summary judgment in favor of Peele on the defendants' abuse of process claim, but denied summary judgment on the defendants' malicious prosecution claim. *Id.* at *12-13. Finally, the district court dismissed, by agreement, the Portage Police Department as a party defendant because the Department lacks the capacity to be sued.[1] *Id.* at *13. After the district court issued its February 28 order, the parties stipulated to the dismissal, with prejudice, of the defendants' malicious prosecution claim. (R. 88.)

The defendants did not appeal the district court's judgment, but Peele did. Abandoning his due process and defamation claims, Peele now argues only that the defendants punished him for his political speech in violation of the First Amendment. Peele also raises several ancillary issues relating to his retaliation claim. We address these issues at the end of our opinion.

## II. ANALYSIS

There is much more to this case than our brief introduction lets on. Our focus, however, is on a narrower issue: whether the district court was right to grant sum-

---

[1] Despite this agreed dismissal, the parties continue to list the Portage Police Department as a party to this case. Because neither side has asked to have the Department reinstated as a defendant, we have omitted the Department from our opinion's caption.

mary judgment on Peele's retaliation claim. Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's entry of summary judgment *de novo* and view all of the evidence in the light most favorable to the nonmoving party. *Arizanovska*, 682 F.3d at 702. A genuine issue of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).

Peele's lone claim is that the defendants are liable under 42 U.S.C. § 1983 for transferring him in retaliation for his political activities. The First Amendment protects the free speech rights of public employees. *See Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004) (*citing Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Thus, "[i]t is well established that . . . transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policymaking positions and for employees having a confidential relationship with a superior." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004) (*citing Rutan v. Republican Party of Ill.*, 497 U.S. 62, 65, 71 n.5 (1990), and *Elrod v. Burns*, 427 U.S. 347, 367 (1976)). To make out a prima facie case of First Amendment retaliation, a public employee must present evidence that "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

The first question, then, is whether Peele made a constitutionally protected statement. Peele argues that we should consider all of his conduct during election season protected. In response, the defendants concede that Peele's May 8 statement to the *Times* was constitutionally protected, but argue that we should not consider the rest of his election-season conduct because that conduct was not raised in Peele's complaint.

We agree with the defendants on this point. "Federal Rule of Civil Procedure 8(a) requires that a complaint adequately plead facts to put a defendant on notice of the plaintiff's claim[.]" *Segal v. Geisha NYC LLC*, 517 F.3d 501, 505 (7th Cir. 2008). Here, Peele's complaint alleged only one clear instance of protected conduct: his statement to the reporter in May 2007. (*See* R. 1 at ¶ 7) (alleging that "on May 9, 2007, Plaintiff, Roger L. Peele voiced his First Amendment [r]ight to publicly support his candidate for Democratic Mayor of Portage, Steve Charnetzky[,] against candidate[ ] Olga Velazquez").[2] Beyond that, the complaint offered nothing more than vague boilerplate language. (*See, e.g.*, *id.* at ¶ 16) (alleging that the defendants, "by their acts and failures to act and by their deliberate indifference to acts and failures to act," violated Peele's "First Amendment [r]ights including but not limited to the right of free

---

[2] The complaint identified May 9, 2007, as the date of Peele's statement. As our prior discussion makes clear, the statement was published on May 9, 2007, but Peele actually *made* the statement on May 8, 2007.

speech and association" and "the right of freedom of political association"). For the reasons correctly and comprehensively discussed in the district court's opinion, *see Peele*, 2012 WL 693570, at *8-9, these vague allegations were not enough to give fair notice that Peele's claim involved protected conduct other than the conduct of May 8, 2007. Accordingly, we will confine our analysis to the events surrounding May 8, 2007.

The second element of Peele's claim requires him to show that he suffered a deprivation likely to deter free speech. *Kidwell*, 679 F.3d at 964. While the defendants suggest in passing that Peele did not suffer such a deprivation when they transferred him to the Station Duty Officer position, (*see* Appellee's Br. at 38-39), they have not supported that suggestion with a developed argument. Instead, the defendants focus all of their attention on the third element of Peele's case: whether Peele provided evidence that his protected conduct was a "motivating factor," *Kidwell*, 679 F.3d at 964, in the defendants' decision to transfer him. (*See, e.g.*, Appellees' Br. at 28) ("Appellees/Defendants claim that they are entitled to summary judgment because Peele has failed to satisfy requirement (3)."). Thus, we turn our attention to the third element of Peele's claim.

There has been some confusion recently about how to apply the "motivating factor" test. We addressed this confusion in *Kidwell*, 679 F.3d at 964-66, and *Greene v. Doruff*, 660 F.3d 975, 977-80 (7th Cir. 2011). As we explained in those cases, the "motivating factor" requirement splits the burden of production between the

parties on summary judgment. *Kidwell*, 679 F.3d at 965. The plaintiff has the initial burden to produce evidence that his speech was at least a "motivating factor" in the employer's decision to take adverse action against him— "or, in philosophical terms, a 'sufficient condition'" of the retaliation. *Id.* (*citing Greene*, 660 F.3d at 979-80). The defendant may then rebut that evidence by demonstrating that "the harm would have occurred anyway," even without the protected conduct—or, in other words, "that his conduct was not a *necessary* condition of the harm." *Greene*, 660 F.3d at 980 (emphasis added); *accord Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86 (1977). Put another way, Peele must first provide evidence that the defendants were motivated, at least in part, by a desire to retaliate against him for his protected speech. If he does, then the defendants may counter by showing that they would have reached the same result even without the protected speech.

Here, we think that there is enough evidence for a reasonable jury to conclude that Peele's comments were both sufficient and necessary causes of his transfer. To begin, the timing of Peele's transfer was highly suspicious. Suspicious timing is rarely enough, by itself, to create a triable issue of fact. *Kidwell*, 679 F.3d at 966. "Occasionally, however, an adverse action comes so close on the heels of a protected act that an inference of causation is sensible." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011); *see also id.* (collecting cases). And even if suspicious timing *alone* is not enough to create a triable issue in a particular case, suspicious

timing remains "an important evidentiary ally of the plaintiff." *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011).

Here, Peele made his protected comments on May 8, 2007. They were published in the newspaper the very next day (May 9, 2007), and Peele was transferred the day after that (May 10, 2007). "The closer two events are, the more likely that the first caused the second," *Loudermilk*, 636 F.3d at 315, and it is hard to imagine two key events closer in time than the ones at stake here. Even if this extraordinary temporal proximity is not enough to create a triable issue of fact on its own—a question we need not answer—at the very least, it provides *some* evidence that a retaliatory motive lurked behind Peele's transfer. *See id.*; *Spiegla*, 371 F.3d at 943 ("It is settled in this Circuit that a plaintiff may establish a causal link between protected expression and adverse action through evidence that the adverse action took place on the heels of protected activity.") (internal comma, brackets, and ellipsis omitted).

In addition to this circumstantial evidence, Peele has also presented direct evidence of retaliatory motivation. That evidence comes from the deposition of Joe Radic, the officer who held the Station Duty Officer position before Peele replaced him. (*See* R. 50-4 at 14-23.) According to Radic, Chief Burch told Radic that he would not have to work as the Station Duty Officer anymore. Burch then went on to explain that Peele was being transferred to the Station Duty Officer position because Peele had "made the mayor mad." (*Id.* at 21.) Burch further ex-

plained that the "mayor" he was referring to was Velazquez, who had just defeated Charnetzky in the primary and presumably would soon become mayor. (*Id.* at 22.)

We express no opinion at this stage on whether Radic's recollection of Burch's statements is credible. But Burch is a party to the case, so his alleged statements are not hearsay. *See* Fed. R. Evid. 801(d)(2)(A). And, as the Chief of Police, Burch was a key player in the decision to transfer Peele. If genuine, Burch's statements would provide powerful evidence that Peele's transfer was politically motivated. We think this evidence, combined with the suspicious timing of the transfer, could be enough to lead a reasonable jury to decide in Peele's favor.[3]

Before moving on, we should note that the defendants moved, in the district court, to strike Radic's testimony about Burch's statements. (*See* R. 55 at 5, 17.) The defendants argued that Radic's deposition was contrary to Burch's deposition; contained improper speculation on Velazquez's motivations; and could be interpreted to

---

[3] Peele argues that other evidence also supports his claim. But determining whether this evidence is admissible will require findings about witness unavailability, *see* Fed. R. Evid. 804, authorization to speak for a party, *see* Fed. R. Evid. 801(d)(2)(C)-(D), and the existence of personal knowledge, *see* Fed. R. Evid. 602. Because Radic's deposition and the suspicious timing are enough to avoid summary judgment, we need not discuss this other evidence. We leave it to the district court to determine, in its sound discretion, whether Peele will be able to introduce this additional evidence at trial.

have a more innocent meaning. (*Id.* at 5.) The defendants also argued that Peele's brief failed to properly cite to Radic's deposition under Northern District of Indiana Local Rule 56-1. (*Id.* at 17.)

Those seem like thin grounds for a motion to strike. Take, for instance, the fact that Radic's deposition conflicted with Burch's deposition and was susceptible to multiple meanings. (*Id.* at 5.) That is not a reason to strike Radic's testimony; it is a reason to present it to a jury to resolve the conflicting stories and interpretations. Or consider the argument that Radic's recollections of Burch's statements are too speculative to be introduced as evidence of Velazquez's motivations. (*Id.*) (*citing* Fed. R. Evid. 602). That is true, but Radic's recollections would be highly relevant to *Burch's* motivations, and, as discussed, Burch was a key player in the decision to transfer Peele. Only the issue of noncompliance with Local Rule 56-1 might have some substance behind it. But even so, it would not necessarily have led to striking Radic's testimony; "[o]ur cases make it clear that a district court's decision whether to apply a local rule strictly or to overlook any transgression is one left to the district court's discretion." *Stanciel v. Gramley*, 267 F.3d 575, 579 (7th Cir. 2001) (internal quotation marks and brackets omitted).

It is unclear, however, whether the district court considered these issues. As the district court (correctly) noted, both sides filed "voluminous" motions to strike each other's statements of fact. *Peele*, 2012 WL 693570, at *1. As a result, the district court declined to discuss the

motions to strike in detail and instead wrote that it considered the motions and would discuss only those facts that the court deemed "material" and "either undisputed by the parties or reflect[ing] the Court's determination that they [were] properly supported by the evidence in the record." *Id.* The district court's ensuing factual discussion did not mention Radic's testimony. *Id.* at *2-3.

This omission suggests, at least implicitly, that the district court thought that Radic's recollections were somehow inadmissible or unsupported. Nevertheless, we hesitate to defer to, or rely on, the district court's implicit suggestion that it struck Radic's statements. True, both sides' motions to strike were indeed voluminous and occasionally frivolous. Moreover, many of Peele's filings, both in this court and in the district court, contain unsupported assertions and poor citation practices. Still, without a clear articulation of the district court's reasoning, we cannot tell whether the court wanted to strike Radic's statements or whether it simply overlooked them. In any event, Peele relies on Radic's testimony in his briefs in our court, (*see* Appellant's Br. at 11, 30, 43-45), and the defendants have not objected to that reliance. As a result, we think it appropriate to base our decision, in part, on Radic's deposition testimony about his conversation with Burch. And, as discussed, we think that this testimony, combined with the highly suspicious timing, is enough to survive summary judgment.

There is, of course, another side to this story. The defendants have provided evidence that Peele was transferred

because of his disruptive, profane, and insubordinate behavior, not because of his constitutionally protected speech. And, according to Chief Burch, Assistant Chief Jolley, and former Mayor Olson, the decision to transfer Peele was made on May 4, 2007, several days *before* Peele made his protected statements. Nevertheless, we do not think that this evidence entitles the defendants to summary judgment. Our role at this stage is to decide if there is a factual dispute, not which side of the dispute is right. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Moreover, we think that Peele's evidence casts enough doubt on the defendants' story to create a triable issue. The defendants claim that they decided to transfer Peele on May 4, 2007, but waited until May 10, 2007, to tell him about it. But employee attendance records show that the key players—Peele, Burch, Jolley, and Swickard—were all present at work on May 8 and May 9. (R. 56-1 at 24); (R. 71-1 at 21-23). This fact casts at least some doubt on the defendants' claim that they made their decision earlier in the week—if they had already made their decision, why not tell Peele about it immediately? Peele also points out that the written statement transferring him was signed on May 10, not May 4. That too suggests that the defendants' story might be pretextual. The defendants counter that they actually drafted the statement on May 7, but left the date blank so they could fill it out later. (*See* Appellees' Br. at 16, 19.) That is surely possible, but a reasonable jury could believe that explanation to be pretextual in light of Burch's alleged statements to Radic and the otherwise suspicious timing of the transfer.

At this stage, we must view all of the evidence in the light most favorable to Peele. *See Arizanovska*, 682 F.3d at 702. It may ultimately be the case, of course, that the defendants' evidence will prove more convincing. If it does, the defendants will be entitled to a verdict in their favor at trial. *See Greene*, 660 F.3d at 980. But the defendants' evidence is not so overwhelming that no reasonable jury could decide against them. Accordingly, they are not entitled to summary judgment in their favor.

Peele also asks us to address several other related issues, including conspiracy, qualified immunity, statutory immunity, and whether the City of Portage is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). While Peele characterizes these arguments as requests for summary judgment, (*see* Appellant's Br. at 15, 32, 35, 37-38), they are more accurately described as issues of law. For example, a holding that the defendants are not entitled to qualified or statutory immunity would merely bar the defendants from presenting qualified or statutory immunity defenses. It would not bar the defendants from presenting *any* defense, nor would it entitle Peele to entry of judgment in his favor without the need for a trial.

But however one characterizes these issues, we need not tackle them now. The district court did not address conspiracy, immunity, or *Monell* below. Nor have the defendants briefed these issues in our court. Accordingly, we will leave these questions for the district court to consider in the first instance on remand.

### III.  Conclusion

For the foregoing reasons, we REVERSE the district court's grant of summary judgment on Peele's retaliation claim and REMAND for further proceedings consistent with this opinion.