In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3365

THERESA BISLUK,

*Plaintiff-Appellant*,

*v.*

BRIAN HAMER, LAINIE KROZEL, PAT WELCH,
JESSICA NUNES, and ROD R. BLAGOJEVICH,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 09 CV 3080 — **Richard Mills**, *Judge.*

ARGUED JUNE 1, 2015 — DECIDED SEPTEMBER 9, 2015

Before WOOD, *Chief Judge*, and POSNER and WILLIAMS,
*Circuit Judges*.

WILLIAMS, *Circuit Judge.* Theresa Bisluk, a conservative
who votes Republican, was a special agent working in Chi-
cago for the Illinois Department of Revenue's Liquor Control
Commission under former Illinois Governor Rod Blago-
jevich's Democratic administration. She purchased a home
in southern Illinois and asked her employer about transfer-

ring duty assignments from Chicago to southern Illinois, but she ultimately failed to submit a transfer request or apply for the job. And she did not get a position. She sued several state officials alleging that she was denied a transfer to southern Illinois because of her political association in violation of the First Amendment and because of her gender in violation of the Equal Protection Clause of the Fourteenth Amendment.

We find that Bisluk did not present sufficient evidence that she was discriminated against based on her political affiliation or gender. The undisputed evidence shows that Bisluk did not receive the transfer because she did not submit the proper transfer paperwork or apply for the job. Therefore, we affirm the district court's grant of summary judgment.

## I.  BACKGROUND

As a division of the Illinois Department of Revenue, the Liquor Control Commission (the "Commission") is a state agency. It enforces laws regarding the manufacture, distribution, and sale of alcohol and liquor. In 1996, Bisluk began working for the Commission as a Special Agent I ("Agent I"). She, like all Agents Is, took an exam to qualify for the position. Her assigned geographical territory consisted of Cook County, Illinois, which includes Chicago, and its surrounding counties.

In addition to Agent Is, the Commission employs Special Agent IIs ("Agent IIs"). Agent Is and Agent IIs perform the same enforcement functions, but Agent IIs have additional responsibilities as supervisors who train, oversee, and re-

view the work of Agent Is. The union that represents Agent Is is different from the union that represents Agent IIs.

The defendants held leadership positions and played a role in employment decisions at the Department of Revenue. Brian Hamer was Director of the Department of Revenue, and Pat Welch, the Deputy Director, oversaw Agents Is and Agent IIs. Lainie Krozel was the Chief of Staff, and part of Krozel's responsibilities included staffing vacant positions in the Commission. Senior managers notified Krozel when they had vacant positions. Jessica Nunes was the Assistant Human Resources Director. She approved electronic personnel action requests ("ePARs"), which are internal forms required for all vacancy postings and transfers. All employment decisions of the Commission were ultimately approved by the office of former Illinois Governor Rod Blagojevich pursuant to one of his executive orders.

Bisluk describes herself as a pro-life conservative, who votes Republican, but is not officially a member of a political party. She has always voted Republican. She also worked for a Republican politician in her youth and donates money to Republican politicians.

As an employee, Bisluk was favorably regarded by her supervisors, but Welch was more critical of her and other female agents. Eric Wisette, Bisluk's supervisor until May 2009, and George Gottlieb, who supervised Bisluk after Wisette retired, regarded Bisluk as a "fully satisfactory employee" or a "fully competent agent." Welch, who supervised Wisette and Gottlieb during the relevant period, would contact them about various aspects of Bisluk's work performance. He wanted them to issue reprimands to her. Wisette and Gottlieb believed Welch's criticism of Bisluk was base-

less and unwarranted. They noticed Welch's criticism was never directed at male agents or agents whom performed worse than Bisluk. Wisette and Gottlieb agreed that Bisluk's performance was equal to or exceeded the performance of the male agents they supervised.

Welch apparently paid very close attention to Bisluk. In the fall of 2007, Welch asked another Agent II who knew, but did not supervise Bisluk, to tail her and suggested that she might be engaged in misconduct. He also told the Agent II that he knew where Bisluk came from and that Lou Casper, a prominent member of the local Republican Party, was "her guy and had supported her." The Agent II refused to follow Bisluk.

Bisluk had lived in Chicago her entire life. But for a long time, she dreamed of purchasing land in southern Illinois to cultivate grapes and operate a winery after retiring from state government. She took steps to make that dream a reality in 2007. After learning that David Fournie, an Agent II working in southern Illinois, intended to retire in March 2007, Bisluk put her Chicago property on the market. She sold it in January 2007 and bought a home and land in southern Illinois in March 2007.

Also aware of Fournie's imminent retirement, the Department of Revenue began the process to fill Fournie's vacancy. On March 8, 2007, Hamer signed off on an Agent II job description that stated that one quarter of the Agent II's time would be spent as a lead worker overseeing Agent Is engaged in investigations concerning the enforcement of Illinois liquor laws; assigning reviewing, and controlling the work of Agent Is; and training new staff, among other responsibilities.

On March 15, 2007, Welch originated a vacancy request form to fill the position created by Fournie's departure. The vacancy request stated that there was only one Agent II in the territory. It also stated the importance of filling the position due to the potential non-compliance of liquor establishments and lost revenue that may result if the position were not filled. The form also indicated that Welch expected the position to be filled with an Agent II. The request was approved on the afternoon of March 28, 2007.

The previous day, March 27, 2007, Bisluk sent a handwritten letter to Eric Wisette, her supervisor, requesting a transfer to the position created by Fournie's departure. That same day, Wisette emailed the letter to Welch and another employee. On the morning of March 28, 2007, Welch forwarded the email to Nunes and asked her to respond to Bisluk. Nunes responded to Welch stating, in part:

> I will send her a formal response, but unfortunately she does not have any rights to just request a transfer. We will proceed with filling the vacancy through the contract … and transfer requests are filled last. She must also have an official Request For Transfer … on file.

Nunes responded to Bisluk via email stating that Nunes had received Bisluk's letter requesting a transfer. Nunes stated that the relevant bargaining agreement required Bisluk to submit an official transfer request (RPS-65) to the personnel office. Nunes added that because transfer requests are the last step in filling the position, Bisluk should affirmatively apply for the position by submitting a bid form and an application for the position (CMS-100) during the posting period for the vacancy.

Sometime before the Fournie position was posted, Bisluk filled out a transfer request form and submitted it to the Department of Revenue, but the form was incomplete. It was undated, unsigned, and does not indicate the requested work location or position title. Bisluk also contacted Nunes's office and asked if she could be informed when it posted the position. Nunes told Bisluk that she should check the Illinois Department of Central Management Services website because the vacancy would be posted there. Bisluk began checking the website weekly and continued to do so until she learned the Department of Revenue had filled Fournie's position.

It was not until October 18, 2007, that the Department of Revenue posted the vacancy announcement for the Fournie position. The posting period ended October 31, 2007. Bisluk did not apply for the position. The Department of Revenue requested a candidate eligibility list for Special Agent IIs after the posting period closed. No one was on the eligibility list, so the Department of Revenue requested that an exam be administered to create a list of eligible candidates. The test was administered in January 2008. Bisluk did not take that Agent II exam and did not have an eligible Agent II exam score on file. The Department interviewed eligible candidates around March 2008. After the candidate with the highest score turned down the offer, the Department hired Becky McClure, a Democrat, who had the second highest score.

After the Department of Revenue filled the Fournie position, several other positions in southern Illinois became available. Bisluk did not submit any (or the appropriate) application for these positions.

Bisluk filed a complaint in federal district court alleging that Welch and Krozel, among others, violated the First Amendment by not transferring her based on her political affiliation. It also alleged that Welch violated the Fourteenth Amendment by not doing so because of her sex. Each defendant below moved for summary judgment, and the district court granted the motions. Bisluk appeals the order granting summary judgment as to Welch and Krozel.

## II. ANALYSIS

On appeal, Bisluk argues that the district court erred by granting Welch's and Krozel's motions for summary judgment as to her First Amendment and Equal Protection claims. We disagree and discuss each claim in turn. We review the district court's decision granting summary judgment de novo and construe all facts in favor of Bisluk. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

### A. Summary Judgment Was Appropriate on Bisluk's First Amendment Claim.

Bisluk argues that Welch and Krozel violated her First Amendment rights. She contends Welch's awareness of Bisluk's political affiliation and the animus he directed toward her would permit a reasonable jury to conclude that Bisluk's affiliation was at least one reason why she did not receive favorable consideration of her transfer request. She further contends that although Krozel was not aware of her affiliation with the Republican Party, there is evidence that Krozel turned a blind eye to the manner in which the Department of Revenue only filled vacancies with those loyal to the Blagojevich administration, which is sufficient for liability.

The First Amendment prohibits discrimination against public employees based on the employees' political association. *Elrod v. Burns*, 427 U.S. 347, 356 (1976); *see also Rutan v. Republican Party of Ill.*, 497 U.S. 62, 79 (1990) (finding that a public employee's affiliation with a political party is protected under the First Amendment). Deciding whether to transfer a government employee based on political affiliation violates the First Amendment, with certain exceptions for policymaking positions. *Rutan*, 497 U.S. at 71–72 & n.5. To make out a prima facie claim for a violation of this First Amendment right, Bisluk must present evidence that (1) her conduct was constitutionally protected, and (2) her protected conduct was a motivating factor in the challenged employment action. *See Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *see also Mt. Healthy City. Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Motivating factor causation splits the burden between the parties on summary judgment. *Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013). A "plaintiff has the initial burden to produce evidence that his speech was at least a 'motivating favor' in the employer's decision to take adverse action against him." *Id.* Defendants may rebut that evidence by demonstrating that they would have taken the same action even if the protected conduct had not occurred. *Id.*

Bisluk failed to provide sufficient evidence to establish her First Amendment claim. Bisluk's Republican Party affiliation is constitutionally protected conduct, which satisfies the first element of her claim. However, Bisluk cannot establish her claim because there is no causal link between Bisluk's failure to receive a transfer and her association with the Republican Party. Bisluk did not receive a transfer be-

cause she did not apply for the relevant positions. This fact alone defeats her claim. A party cannot state a claim for refusal to honor a transfer request due to political affiliation if she did not submit a transfer request or application for the relevant position as required by the employer. Bisluk knew that the position would be posted for a limited period. She also knew of the formal procedure by which she could apply or submit a transfer request and that she was required to do so to be considered for the Fournie position and other vacant positions to which she wanted to be transferred. Nonetheless, she failed to follow either procedure and that is the reason she did not receive a transfer. Thus, her claim fails.

Further, there is no evidence that Welch or Krozel had a role in selecting the people to fill the relevant positions. The evidence shows that the Department of Revenue initially reviewed the eligibility list to determine qualified candidates. Because there were no eligible candidates when the posting closed, an Agent II exam was administered. Those who took the Agent II exam were considered for the Fournie position. The Department offered the position to people based on their test scores. Bisluk did not take the Agent II exam with the others who were considered for the Fournie position nor did she have an eligible exam score on file. Again, Bisluk did not receive the transfer because she did not take the steps to be considered for the position.

While there is no evidence that Krozel was even aware of Bisluk's political affiliation, there is some evidence to suggest that Welch harbored some discriminatory animus toward her because of her political views. However, because Bisluk failed to formally request a transfer to or apply for the relevant positions, this evidence carries no weight. *See Brown v.*

*Cty. of Cook*, 661 F.3d 333, 337 (7th Cir. 2011) ("If all that's charged is discrimination on political grounds, *any* nonpolitical ground the defendant can prove would have caused the discrimination regardless of the presence of political hostility will preclude liability.") Therefore, we affirm the district court's grant of Welch's and Krozel's motion for summary judgment as to the First Amendment claim.

**B. Summary Judgment Was Appropriate on Bisluk's Equal Protection Claim.**

Bisluk also contends that Welch violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against her based on sex.

To survive summary judgment, Bisluk must put forth direct or indirect proof of discrimination to create a triable issue of fact as to whether gender discrimination motivated her employer's decision not to transfer her. *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719–20 (7th Cir. 2005); *Bruno v. City of Crown Point, Ind.*, 950 F.2d 355, 361 (7th Cir. 1991). Using the direct method, Bisluk must offer evidence that shows or creates an inference that Welch intentionally discriminated against her because of her gender. *See Harper v. Fulton Cty., Ill.*, 748 F.3d 761, 765 (7th Cir. 2014). Under the indirect method, Bisluk must show that: "(1) she is a woman, (2) she suffered an adverse employment action, (3) she was meeting [her employer's] legitimate business expectations, and (4) a similarly situated man was treated more favorably." *Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 593 (7th Cir. 2010). To determine whether two employees are similarly situated, "a court looks at all the relevant factors, which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards,

(iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications," if the employer considered these factors when filling the position. *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003).

As for direct proof of discrimination, there is some evidence from which a reasonable juror could infer that Welch harbored discriminatory animus toward Bisluk because of her sex, as he was more critical of women and her in particular. However, there is insufficient evidence of a causal link between the animus and Bisluk's failure to receive a transfer. The evidence merely shows that Welch was critical of Bisluk, and she was subject to more scrutiny by Welch as compared to male employees. Similar to the First Amendment claim, this claim fails because there is undisputed evidence that Bisluk never applied for a transfer. Welch could not have denied her a transfer in violation of the Fourteenth Amendment if she never applied for one. There is no evidence that even suggests that if she were a man, she would have received the position under these circumstances.

Bisluk's failure to apply for the position or submit a formal transfer request is fatal to her claim under the indirect method of proof as well. Nonetheless, we will analyze the elements of the indirect method for the sake of completeness. Bisluk is a woman, and there is evidence that she was meeting her employer's expectations, but there is insufficient evidence supporting the remaining elements of her claim. First, she did not suffer an adverse employment action. *See Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744–45 (7th Cir. 2002) (finding a transfer without a reduction in pay or other benefits based on an employee's purely subjective

preference for one position over another is not an adverse employment action); *see also Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir. 2004) (noting the same analysis governs claims of sex discrimination under Title VII and § 1983). To the extent that her failure to be transferred to a position in southern Illinois is contrary to her desires, it is not the type of employer act that is subject to liability under § 1983. *See Herrnreiter*, 315 F.3d at 744–45.

Further, Bisluk did not present evidence of a relevant comparator. There is no evidence of a male employee who held the same job, was subject to the same standards, was subordinate to the same supervisor, and had comparable qualifications that received a transfer to an Agent II position after failing to submit a formal transfer request, apply for the position, or take the Agent II exam. Bisluk admits as much, but contends it is not fatal to her claim. She is simply wrong. Because Bisluk failed to make out a prima facie case as to her Fourteenth Amendment claim, the district court's grant of summary judgment in favor of Welch on this claim was not in error.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.