**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 9, 2014
Decided October 28, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 13-3247

| | |
|---|---|
| SALVATORE ZICCARELLI,<br>　　*Plaintiff-Appellant,*<br><br>　　　　*v.*<br><br>THOMAS J. DART, Sheriff of Cook<br>County, Illinois, and COOK COUNTY,<br>ILLINOIS,<br>　　*Defendants-Appellees.* | Appeal from the United States District Court<br>for the Northern District of Illinois,<br>Eastern Division.<br><br>No. 11 C 4909<br><br>George M. Marovich,<br>*Judge*. |

**O R D E R**

Salvatore Ziccarelli, who is white, works for the Cook County Sheriff's Department as a guard at the county jail. He sued the sheriff (and the county as indemnitor, *see* 745 ILCS 10/9-102) alleging that younger, female, and non-white guards were treated more favorably, and that he suffered retaliation when he complained to supervisors about the unequal treatment. The district court granted summary judgment for the defendants, reasoning that Ziccarelli, who relied on the indirect method of *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973), had not established a prima facie

case of discrimination or retaliation. That conclusion is correct. Ziccarelli did not identify anything but trivial distinctions between himself and his coworkers, nor did he identify any adverse action taken in response to his complaints of unfair treatment. No jury could find from the evidence that Ziccarelli was treated less favorably than other guards or that he suffered retaliation.

Unless otherwise noted, the following facts are undisputed and presented in the light most favorable to Zicarrelli. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012); *SMS Demag Aktiengesellschaft v. Material Sci. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

Ziccarelli has worked at the jail for 25 years. In April 2009 he began submitting grievances complaining that he was receiving too few "lunch premiums." "Lunch premiums" are given if guards must work through their lunch break when the jail is understaffed. Guards working through lunch have the option of being paid time-and-a-half for that hour or receiving an hour of compensatory or vacation time. A month before he submitted his first grievance, Ziccarelli saw the timecard of a less-senior Hispanic guard who, he alleged, received significantly more premiums. Ziccarelli complained to his superiors, who directed his scheduling supervisors to give Ziccarelli more opportunities to earn premiums.

The same day that Ziccarelli filed one of his grievances, April 13, 2009, he was written up for losing his utility belt. He had forgotten the belt in the employee washroom after becoming ill on shift, and although equipment losses are to be reported within 72 hours, Ziccarelli waited 5 days. Initially he was suspended for 5 days, but a successful appeal reduced that sanction to a written reprimand (which eventually was removed from his file).

In May 2009 Ziccarelli repeatedly telephoned another guard on shift to ask about his lunch premiums. That guard formally complained that Ziccarelli's calls were harassing, and then a year later Ziccarelli submitted a grievance asserting that the guard had been pressured into complaining. Ziccarelli was never disciplined for this incident, and the other guard conceded later that perhaps "harassment" was too strong a word to describe the situation.

A few months after the "harassment" incident, in August 2009, Ziccarelli was ordered to complete the paperwork of a younger, female, Hispanic guard. Then in October 2009, Ziccarelli wrote a letter that he and other guards signed; the letter asserts

that a younger, female, black guard was receiving easier assignments. The next day Ziccarelli filed another grievance accusing a supervisor of retaliating for the letter by calling the "anonymous author" a coward and using profanity during roll call. At some point in 2009, Ziccarelli was transferred from Division 2 to Division 5 because of purported harassment and favoritism. He says he received more lunch premiums after the transfer.

Prior to his transfer Ziccarelli also complained to a supervisor that, effectively, he was being assigned more "cross-watching" duties than other guards. Cross-watching means observing two tiers of inmates without a partner. Ziccarelli explained that whenever he was partnered with a female guard, she invariably would be called away to other assignments, leaving him to cross-watch for most of his shift. Indeed, there were some areas that female guards routinely were not assigned to protect inmate privacy (if they were undressed), but the male guards watching these areas still had backup. Moreover, the practice of cross-watching is not prohibited, and Ziccarelli was working in the minimum security area of the jail.

Before his transfer Ziccarelli also concluded that he was being denied a normal rotation of job assignments, though he never filed a grievance about it. Standard practice is to rotate guards into new positions every 90 days. Ziccarelli felt he was being kept in positions with greater inmate contact for longer periods than other guards.

Ziccarelli filed an administrative charge of discrimination with the Equal Employment Opportunity Commission and Illinois Department of Human Rights in October 2009. In July 2011 he filed this action claiming that the Sheriff's Department had discriminated against him based on his age, race, and sex and then retaliated after he complained. *See* 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(c)(1). He alleged that the Department had denied him lunch premiums, given him more-difficult job rotations, and forced him to guard a higher number of inmates. He further alleged that the Department had retaliated against him by pressuring his coworker to accuse him of harassment, unfairly disciplining him for losing his utility belt, and making him complete another guard's paperwork.

In granting summary judgment for the Sheriff's Department, the district court concluded that a jury could not reasonably find from the evidence that Ziccarelli had been treated adversely or that similarly situated employees outside his class were treated more favorably.

For the lunch premiums, the district court compared the totals for Ziccarelli and four other guards and concluded that the numbers do not raise an inference of adverse or unequal treatment. No younger guard had received more premiums than Ziccarelli. One female guard had bested him by six premiums over a 22-month period, as had two male Hispanic guards during that same period. A jury could not reasonably find, the court reasoned, that a deficit of 6 premiums in 22 months constituted a materially adverse employment action.

For the job rotations, the district court noted that Ziccarelli had not identified a younger or non-white guard for comparison, eliminating any finding of age or race discrimination. Ziccarelli had offered some evidence that a female guard was not rotated out of her "easier" job during the same time that he remained in place for more than 90 days. The district court concluded, however, that Ziccarelli could not prevail on a claim of sex discrimination because, the court reasoned, he is arguing "reverse discrimination," but lacks additional evidence of "background circumstances" suggesting that the Sheriff's Department discriminated against men. *See Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 439 (7th Cir. 2014).

Regarding cross-watching, the district court reasoned that Ziccarelli had not produced evidence that guards outside his protected classes were treated more favorably or were asked to perform safer or easier tasks.

Finally, on Ziccarelli's retaliation claims, the district court concluded that he lacked evidence of adverse treatment because the written reprimand for losing his belt had been removed from his file. Similarly, his coworker's accusation of harassment had never led to disciplinary action, so it was not adverse.

Ziccarelli moved for reconsideration, but the district court denied that motion with the explanation that the plaintiff simply was rehashing his previous contentions, save for one new one that could have been, and should have been, made in opposition to the Department's motion for summary judgment.

On appeal Ziccarelli has abandoned his claim of age discrimination but challenges the grant of summary judgment for the Sheriff's Department on his claims of sex and race discrimination. These claims rest on his allegations of unfair treatment in allocating lunch premiums, allotting cross-watching duties, and rotating job assignments. Ziccarelli also challenges the grant of summary judgment on his claim of

retaliation; he says that the purported denial of lunch premiums also is evidence of retaliation.

A prima facie case of discrimination includes four elements, among them that the plaintiff suffered an adverse employment action. *See Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234–35 (7th Cir. 2014); *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). This element helps to distinguish meritorious claims of discrimination from lawsuits about trivial personnel matters. *See Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1069–70 (7th Cir. 2012); *Lewis*, 496 F.3d at 653. To have satisfied this element of his prima facie case, Ziccarelli needed evidence of "some quantitative or qualitative change in the terms or conditions of his employment or some sort of real harm." *Atanus v. Perry*, 520 F.3d 662, 675 (7th Cir. 2008) (internal quotation marks and citation omitted). Examples of adverse employment actions might include reduced benefits, a transfer that diminishes career prospects, or a job placement that subjects an employee to unsafe or significantly negative conditions. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014); *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114, 1119 (7th Cir. 2009). Ziccarelli's case presents nothing of the sort.

First, Ziccarelli argues that the district court erred in concluding that the six-premium deficit was not an adverse employment action. Lower pay or benefits can be an adverse employment action, *Harper v. Fulton Cnty., Ill.*, 748 F.3d 761, 767 n.5 (7th Cir. 2014), but we have distinguished between pay that employees are entitled to and pay within the employer's discretion, *Lewis*, 496 F.3d at 653–54; *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 654 (7th Cir. 2000); *Rabinovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir. 1996). The distinction is useful in deciding if a pay disparity or change in pay was sufficiently material to qualify as adverse action. *Lewis*, 496 F.3d at 654. Broadly, if pay differences result from "sporadic," "discretionary" payments that the plaintiff could not count on, rather than from an expected component of the plaintiff's salary, then the denial was not adverse. *See Lewis*, 496 F.3d at 653–54; *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 602–03 (7th Cir. 2001). As pointed out in *Hunt*, issues of discretionary payments and "the principle of *de minimis non curat lex*" often are intertwined "to place such denials beyond the reach of employment discrimination statutes." 219 F.3d at 654. The guards at the jail surely had no expectation of working only on days when the facility was understaffed, and Ziccarelli does not dispute that he was not entitled to lunch premiums. Premiums can be distributed by seniority, although the record is unclear whether this was the consistent practice. But no matter how they were distributed, premiums were not available as a matter of right, but only when the jail was shorthanded.

Ziccarelli ignores this basic point. The parties' and district court's comparisons of total lunch premiums allotted to Ziccarelli and other guards neglect to analyze whether Ziccarelli even was *eligible* for a premium when another guard received one, not to mention that the totals do not account for the guards' different shifts and assignments. *See Cisneros v. City of Chicago*, 2002 WL 31356404, at \*3,\*6–7 (N.D. Ill. 2002) (Department of Aviation worker alleging discriminatory denial of overtime had to account for Collective Bargaining Agreement that limited days when she was eligible to work extra shifts, and could not make comparison to coworker who worked at different facility for part of year in question).

After engaging in discovery, Ziccarelli managed to identify five dates in 2009 when, he says, he was denied a lunch premium: April 13, May 7, May 8, August 6, and August 9. In his administrative charge of discrimination, he also alleged that he was denied a premium on March 24, 2009. Ziccarelli's payroll records show that he wasn't even working on May 8, 2009. On appeal, Ziccarelli still offers Anna DeJesus and Enrique Cruz as similarly situated employees who were treated more favorably. Even assuming that DeJesus and Cruz were in positions with the same operational needs and were chosen over Ziccarelli (an assumption for which there is no evidence), neither guard received a lunch premium on March 24, April 13, August 6, or August 9. Cruz received a premium on May 7, when Ziccarelli and DeJesus didn't receive one. But an examination of the roster sheet and payroll records for May 7 indicates that Ziccarelli wasn't on the same watch as Cruz.

So Ziccarelli's evidence raises no inference of adverse treatment relative to his chosen comparators. More importantly, a difference of 6 premiums over 22 months is negligible. Assuming that the hourly wages of the guards are as listed in Appendix A of the Collective Bargaining Agreement, this deficit would total between $172.53 and $345.06 (6 premiums, paid at time-and-a-half, would equal 9 hours paid at an hourly wage between $19.17 and $38.34). This is hardly the "chasm" Ziccarelli alleges. It does not rise to the level of adverse action under Title VII.

This also resolves Ziccarelli's claim of retaliation. While adverse actions in the retaliation context are not limited to acts that affect the terms and conditions of employment, the acts must still be more than trivial. *Thompson v. N. Am. Stainless LP*, 562 U.S. 170, 868 (2011); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Henry v. Milwaukee Cnty.*, 539 F.3d 573, 586–87 (7th Cir. 2008). This is trivial.

Even weaker is Ziccarelli's evidence that as a male he was forced to cross-watch more frequently and rotated to new positions less frequently than other guards. Ziccarelli points to what he views as preferential treatment given female guards. But his views are subjective, and subjective impressions about the desirability of particular work assignments, without more, are insufficient. *Nagle*, 554 F.3d at 1114, 1117. For rotation assignments, Ziccarelli's evidence is limited to his own subjective beliefs that other assignments were easier and given to female guards, and the deposition testimony of one guard who opined that some rotations were perceived as "cush" positions and seemed to be occupied by women. Even assuming that some rotations are less desirable, being assigned a less-desirable rotation doesn't rise to the level of a significant negative change in work conditions when other guards share these same rotations and job duties. *Nagle*, 554 F.3d at 1120 (strip mall and senior liaison assignments not adverse actions where other officers also performed same duties); *Stephens v. Erickson*, 569 F.3d 779, 791–92 (7th Cir. 2009) (allegedly less-desirable duties not adverse when other accident adjusters also performed same duties). Ziccarelli offers the same subjective statements and deposition testimony as evidence that he was assigned more cross-watching duties. Again, Ziccarelli offered no evidence to show that cross-watching is anything but a normal part of a jail guard's job.

Ziccarelli's final contention on appeal is that the district court erred in denying his motion for reconsideration, which, he says, was rejected on the ground that the motion included a new argument that could have been presented in response to the Sheriff's Department's motion for summary judgment. But other than disagreeing with the court that his postjudgment motion included a new argument, Ziccarelli does not say how he was harmed by the court's "mistake." His motion simply repeated arguments made previously, and it was not an abuse of discretion to deny it.

AFFIRMED.