# In the
# United States Court of Appeals
# For the Seventh Circuit

No. 12-3091

ELENA DIADENKO,

*Plaintiff-Appellant,*

*v.*

MARY ANN FOLINO and THE BOARD OF EDUCATION OF THE
CITY OF CHICAGO,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cv-02723 — **John F. Grady**, *Judge.*

ARGUED SEPTEMBER 10, 2013 — DECIDED DECEMBER 19, 2013

Before KANNE, WILLIAMS, and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Soon after Elena Diadenko began working at Schurz High School in 2009, she became aware of various practices relating to Individualized Education Plans for the school's special education department that, in her view, were problematic. After voicing her concerns to school administrators, Diadenko wrote Chicago Mayor Richard M.

Daley and his office forwarded her letter to the Board of Education for the City of Chicago (the "Board"). A Chicago Public School investigator eventually looked into Diadenko's allegations, but in the interim Diadenko was twice suspended for violating school policies. Diadenko believes she was suspended because she reached out to the Mayor to express her concerns about the special education department at Schurz.

Diadenko and three other plaintiffs filed suit under 42 U.S.C. § 1983 against Schurz's principal, Mary Ann Folino, and the Board, alleging violations of their rights under the First and Fourteenth Amendments and under Illinois law. Diadenko specifically alleged that she was retaliated against for speaking out about the special education department and for refusing to engage in illegal activity occurring within the school. The court granted Defendants' motion for summary judgment and Diadenko appeals.

The district court did not err in granting Defendants' motion because Diadenko failed to present evidence that Folino was aware of her letter to the Mayor before taking disciplinary action against her. Without evidence of knowledge on Folino's part, we cannot find that the letter motivated her decision to discipline Diadenko, which is a key requirement of a First Amendment retaliation claim. Diadenko's challenge to the award of summary judgment on her state law claim also fails because she did not properly present the facts upon which she bases her argument on appeal. Therefore, we affirm the district court's rulings.

## I. BACKGROUND

We take Diadenko's factual submissions as true for pur-
poses of summary judgment. *See Kidwell v. Eisenhauer*, 679
F.3d 957, 964 (7th Cir. 2012). In September 2009, Diadenko
began working as a special education teacher at Schurz High
School, a Chicago Public School. She became aware of prob-
lems within the special education department on her first
day, when she learned that Schurz had recently failed a state
audit. The school failed in part because its Individualized
Education Plans ("IEPs"), or written statements detailing the
school's plan for each student with a disability, were incor-
rectly completed. Despite being in the department for only a
short time, Diadenko quickly concluded that the special ed-
ucation department as a whole was doing "everything
wrong." Specifically, Diadenko took issue with the fact that
parents were not given notice to attend the IEP meetings and
teachers were signing IEPs even though they did not attend
the meetings in which the decisions were made. Diadenko
first raised her concerns with Schurz's Assistant Principal,
Debra Neiman. She told Neiman she felt that Schurz's spe-
cial education case manager was to blame for the depart-
ment's issues because she was underqualified and did not
put in the hours necessary to do her job well. Diadenko next
voiced her concerns with Principal Mary Ann Folino. Folino
told Diadenko not to worry about the case manager's hours.
Dissatisfied with Folino's response, Diadenko quickly took
her complaints outside the school walls and informed the
Illinois State Board of Education of the purported problems
within Schurz's special education department.

Diadenko received a Golden Apple Award for excellence
in teaching in 2004, but her efforts were not so well-received

at Schurz. Tensions began to build between Diadenko and Schurz administrators early on, and the discord was only just beginning. At a department meeting, Diadenko disagreed with Neiman's directive for teachers to include in all IEPs that students were responsible for their own calculators. Their exchange became heated and Neiman told Diadenko to speak with her after the meeting. On October 21, 2009, Folino issued a Cautionary Notice to Diadenko, reprimanding her for disrupting the department meeting with Neiman and missing another mandatory meeting. In defense of her absence, Diadenko explained that she was busy at the time communicating with the Illinois Department of Children and Family Services ("DCFS") about a student. Folino then reminded Diadenko that she was required to inform Schurz administrators whenever she reported a student to DCFS. Days later, Diadenko again landed in hot water when she disclosed confidential information about students in emails to unauthorized Schurz staff members and sent an email to the entire special education department criticizing Folino's management style. On October 30, 2009, Folino gave Diadenko a Notice of Pre-Disciplinary Hearing to address these incidents and, after the hearing, suspended Diadenko for three days. Diadenko appealed her suspension to the Board, but it upheld the suspension in January.

On November 28, 2009, Diadenko wrote a letter to Mayor Daley detailing the problems within Schurz's special education department. Notably, the parties did not include the letter in their materials presented to the district court on summary judgment. So our knowledge of the contents of the letter is based solely on the Investigative Memorandum drafted by Ray Poloko after his investigation into the allegations Diadenko lodged in her complaint to the Mayor's office. Ac-

cording to Poloko's memo, Diadenko's letter complained that Schurz students were not receiving the services required by their IEPs, teachers were asked to write IEPs for students they did not teach, staff members working with students with IEPs were unaware of the students' health needs because they were not given copies of the students' IEPs, and administrators were using outdated tests to measure students' achievement levels. She also voiced her opinion that Neiman was not qualified to oversee Schurz's special education department. Two days later, Folino gave Diadenko another Cautionary Notice, this time admonishing her for making inappropriate and discriminatory comments to another teacher.[1]

The intervening winter holiday break did little to resolve the conflict between Schurz administrators and Diadenko. On January 4, 2010, Folino served Diadenko with yet another Notice of Pre-Disciplinary Hearing. The notice charged Diadenko with refusing to attend a student evaluation meeting and sending a letter containing a student's confidential in-

---

[1] Diadenko asserts other facts for the first time on appeal. She alleges that she contacted Chicago's Inspector General Office before she was suspended in October 2009. Diadenko also asserts that, on December 14th, she refused Folino's request for her to attend an IEP meeting for a student she was no longer teaching. But Diadenko did not present these facts to the district court, even after the court specifically requested a supplemental statement of facts "identifying the communications that [Plaintiffs] allege are protected by the First Amendment." Therefore, we will not consider them in our analysis. *See Domka v. Portage Cnty.*, 523 F.3d 776, 783 (7th Cir. 2008) (recognizing the well-settled rule that a party failing to "inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered … cannot raise such reasons on appeal").

formation to the Local School Council's community representative for Schurz. The hearing was held in early January and, on January 22, 2010, Folino issued her summary of the disciplinary hearing. In addition to the charges alleged in the January 4th notice, Folino stated that her decision to discipline Diadenko was based on Diadenko's repeated refusal to attend special education meetings and the statement she made during an appeal hearing likening Folino to "the Italian Mafia" and a "Nazi concentration camp leader." Folino suspended Diadenko for ten days without pay in connection with these charges and also recommended that the Board issue a warning resolution against Diadenko, which the Board did in May 2010.

The Mayor's office referred Diadenko's letter to the Board, and on January 7, 2010—the same day the Board denied Diadenko's appeal from her October suspension—Chicago Public School investigator Ray Poloko was assigned to respond to Diadenko's allegations. Poloko interviewed Diadenko by telephone on January 12, 2010, and a few days later he met with the two representatives assigned to Schurz from the Office of Specialized Services—the entity responsible for the special education programs of the Chicago Public Schools. The representatives responded to each of Diadenko's allegations and found them mostly unfounded based on their recent experience working with Schurz. On January 26, 2010, Poloko visited Schurz and spoke with Folino, the school nurse, and several teachers Diadenko said would support her allegations. Poloko found that two students were not receiving the full services detailed in their IEPs, but otherwise concluded that Diadenko's allegations were unsupported by the evidence.

On May 3, 2010, Diadenko and three other Schurz-affiliated plaintiffs filed a complaint in federal district court against Folino, the Board, and a third defendant who was later dropped from the case. Plaintiffs sued pursuant to 42 U.S.C. § 1983, alleging that the defendants violated their rights under the First and Fourteenth amendments. The plaintiffs also filed claims under the Illinois Whistleblower Act and other state-law causes of action. The defendants moved for summary judgment. The district court granted the motion, finding that a reasonable jury could not find for plaintiffs on any of their claims. Diadenko's appeal followed.

## II. ANALYSIS

Diadenko contends that the district court erred in awarding summary judgment to Defendants on her First Amendment retaliation claim and her claim under the Illinois Whistleblower Act. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's decision de novo and, as Diadenko was the non-moving party, we construe all facts and draw all reasonable inferences in her favor. *See Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 970 (7th Cir. 2001).

### A. Lack of Evidence of Folino's Knowledge Dooms First Amendment Retaliation Claim

Diadenko argues that her disciplinary suspensions were a direct result of her speech about the alleged problems within the special education department. Diadenko's letter to the Mayor is the only speech we will consider in our analysis of her retaliation claim because it is the only speech

raised properly on appeal. We will not consider her statement to the Office of the Inspector General because this speech was not presented to the district court. *See, e.g., Puffer v. Allstate Ins.*, 675 F.3d 709, 718 (7th Cir. 2012). Additionally, we do not consider Diadenko's internal statements to people at Schurz because the district court found that these statements were not protected speech and Diadenko does not challenge that finding on appeal.

The First Amendment, incorporated against the states through the Fourteenth Amendment, shields government employees from retaliation for engaging in protected speech. *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). In order to establish a First Amendment retaliation claim, a public employee must show that: (1) she engaged in constitutionally protected speech; (2) she suffered a deprivation because of her employer's action; and (3) her protected speech was a but-for cause of the employer's action. *Id.*

In order to conclude that her speech was protected, we would have to determine that Diadenko wrote her letter as a citizen speaking on a matter of public concern, and not pursuant to her official responsibilities. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006). The district court found that Diadenko's letter to the Mayor was protected speech. But de novo review requires us to reconsider this conclusion without deference to the district court's determination. Our inquiry is frustrated by the fact that the parties did not introduce the letter into the record before the district court. Fortunately, we do not need to decide whether Diadenko's letter was protected by the First Amendment. Even if the letter was protected speech, Diadenko's claim still fails because she has

not presented evidence to show that the letter was the reason she was suspended.

To meet her initial burden of proof, Diadenko must demonstrate that her speech was at least a motivating factor in Folino's decision-making process. *See Greene v. Doruff*, 660 F.3d 975, 978-79 (7th Cir. 2011) (concluding that once plaintiff makes this showing, the burden shifts to defendants to rebut with evidence that other factors influenced the decision and the decision would have been made absent the speech); *see also Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009). Even if her letter was a motivating factor in Folino's decision to suspend her, relief would be inappropriate if another "dramatic and perhaps abrasive incident" also influenced Folino's decisions. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–286 (1977) ("A constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct."). Defendants argue that Diadenko's disruptive behavior, offensive and harassing statements to Folino and other staff members, repeated refusals to participate in meetings, and disclosure of students' confidential information influenced Folino's decisions to suspend Diadenko. We do not need to examine these alleged intervening incidents, as Diadenko's claim fails because she has not met her initial burden of showing that her letter was even a motivating factor for either of her disciplinary suspensions.

Folino first suspended Diadenko on October 30, 2009. Her letter to the Mayor was dated November 28, 2009, nearly a month after her first suspension. The fact that Diadenko did not write her letter to the Mayor until a month after she

was suspended is enough to convince us that the letter did not influence Folino's decision to suspend Diadenko in October.

Nor does the record contain any evidence that the letter motivated Diadenko's second suspension in January 2010. Diadenko argues that the proximity in time between her November 28 letter to the Mayor and her second suspension suggests that the letter influenced Folino's decision to suspend her again. Adverse actions that follow "close on the heels" of protected speech can give rise to an inference of retaliation, but only if the person taking the adverse action knew of the protected conduct. *Kidwell*, 679 F.3d at 966; *see also Wackett*, 642 F.3d at 581–83 (finding summary judgment appropriate on a First Amendment retaliation claim where plaintiff could not show that defendants knew of the allegedly protected speech).

Diadenko does not provide any facts to support her assertion that Folino knew of her letter to the Mayor before deciding to suspend her. She argues that Folino became aware of the letter in early December. In support, Diadenko points to a conversation she had with a representative of Chicago Public School's Office of Specialized Service on December 8, 2009. She alleges that the representative was already aware of Diadenko's complaints to the Inspector General and the Mayor, and Diadenko told her she was also planning to go to the media. According to Diadenko, Folino "repeated word for word" at a hearing the following day that she knew that Diadenko had "reported her to Inspector General, that I'm going to contact newspapers." Diadenko Dep. p. 210.

This conversation does not factor into our analysis because Diadenko did not raise it before the district court. Dia-

denko did not mention these facts in her memorandum of law opposing summary judgment, in her initial statement of facts, or in her supplemental statement of facts submitted after the court requested clarification of the facts relevant to her First Amendment claim. Diadenko's counsel argued at oral argument that Folino's alleged statement was presented to the district court because it was part of Diadenko's deposition. But we have long held that "a district court is not required to scour the record looking for factual disputes [or] to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (internal citation omitted). Diadenko waived consideration of her alleged conversation with Folino on summary judgment because she did not raise these facts in her summary judgment materials.

But even were we to overlook Diadenko's failure to present this fact before the district court, her testimony regarding her conversation with Folino would not save her claim from summary judgment. Folino's alleged December statement does not support Diadenko's claim of retaliation because it does not indicate that she was aware of Diadenko's letter to the Mayor before deciding to suspend her in January. The statement only indicates that Folino was aware of Diadenko's comments to the Inspector General and her threat to go to the media, but those issues are not properly before us on appeal because Diadenko did not argue them before the district court. Diadenko's letter to the Mayor is the only speech at issue on appeal, and Folino's alleged December statement does not support a finding that she was aware of the letter. Diadenko did not make any other arguments to support the claim that her letter factored into Folino's deci-

sions, and we will not make them for her. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (recognizing that courts are not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel").

Because Diadenko has not pointed the court to any evidence that suggests that her letter to the Mayor motivated Folino's decision to suspend her in either October or January, her First Amendment retaliation claim fails.

## B. Facts Waived on Illinois Whistleblower Act Claim

Diadenko also asserts a claim under Section 20 of the Illinois Whistleblower Act. Section 20 provides:

> An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation … .

740 ILCS § 174/20 (2009). Diadenko argues on appeal that Folino asked her to participate in an IEP meeting for a student that Diadenko was no longer teaching. But she provides no citation to the record for this assertion. *See* Seventh Cir. R. 28(c) ("No fact shall be stated in this part of the brief unless it is supported by a reference to the page or pages of the record or the appendix where that fact appears."). Nor did she present this fact to the district court in her materials opposing summary judgment. In fact, her argument on this claim before the district court consisted of four lines and cited no law or evidence on the record. The argument is therefore waived. *See Puffer*, 675 F.3d at 718 (finding that arguments are waived on appeal if they are not raised at all or

are "underdeveloped, conclusory, or unsupported by law" when raised before the district court).

It is too late now for an allegation that was never properly raised below. "As we have said before, summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Diadenko's claim fails because she did not present any evidence that she refused to participate in illegal activity until now. Therefore, we will not evaluate whether the alleged activity of having Diadenko sit in on an IEP meeting of another teacher's student was actually illegal or assess the merits of her claim that Defendants retaliated against her for refusing to participate in the meeting.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.