NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 17, 2015[*]
Decided February 18, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-3039

| | |
|---|---|
| PETER KOEHN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Western Division. |
| *v.* | No. 12 cv 50321 |
| LAURI TOBIAS, *et al.,* | |
| *Defendants-Appellees.* | **Philip G. Reinhard,** *Judge.* |

## O R D E R

Peter Koehn was fired from his tenured position as a school psychologist for Harvard Community Unit School District 50 in Harvard, Illinois. Koehn's discharge came soon after he criticized curriculum changes for students receiving special-education services, but the Office of Civil Rights for the United States Department of Education was unable to substantiate Koehn's claim of retaliation. He

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See Fed. R. App. P. 34(a)(2).

sued the members of the District 50 school board, the district's superintendent, and a school principal under 42 U.S.C. § 1983, claiming that he was discharged without procedural due process and in retaliation for engaging in protected speech. The district court granted summary judgment for the District 50 defendants, and Koehn appeals. (Koehn also sued an employee of the Illinois State Board of Education, but she prevailed on a motion to dismiss and is not party to this appeal.) Although we uphold the adverse ruling on Koehn's claim that his discharge violated the Due Process Clause of the Fourteenth Amendment, we conclude that a jury reasonably could find from the evidence of record that Koehn was fired on account of his speech. And since the defendants have not pursued, for purposes of this appeal, their contention that Koehn's speech was not protected by the First Amendment, we vacate the grant of summary judgment on the retaliation claim and remand for further proceedings.

Because this appeal arises from a dismissal at summary judgment, we review the evidence in the light most favorable to Koehn, the non-moving party. See *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 488 (7th Cir. 2014). For the most part the facts are not in dispute.

District 50 hired Koehn in July 2005. At the time, the school district served more than 2,000 students attending its high school, junior high, and elementary schools. Koehn initially served students at the junior high, but by December 2007 his duties had broadened to include students at all levels. He regularly evaluated students receiving special education services, and his written job description provided that he would report to the "District Special Education Coordinator." The defendants have not identified anyone who held that title, though defendant Lauri Tobias was the coordinator at one of the elementary schools until June 2006, two years before she became the District 50 superintendent. The defendants also admitted, in answering Koehn's complaint, that Tobias was both superintendent and "Special Education Director" for the school district.

Tenured staff at District 50 were to be evaluated biennially, but Koehn received only one evaluation, in April 2008. That evaluation was signed by the former principals of the junior high and one of District 50's elementary schools. Neither principal is a defendant, and as far as this record shows, neither principal was designated as Koehn's supervisor or was serving as District Special Education Coordinator. The evaluation was unfavorable and criticized Koehn's performance during the 2007–2008 school year on several grounds, including that diagnostic evaluations required for student Individualized Education Programs were late or inadequate, that he was not following

his assigned schedule, and that some of his comments to and about staff had been inappropriate. Nothing was said in that evaluation about the 2006–2007 school year.

Koehn was not evaluated again in April 2010, when a review should have been scheduled. (At summary judgment the defendants did not offer an explanation, though defendant Margaret Segersten, the principal at the junior high since July 2009, told an investigator from the Office of Civil Rights that the 2010 evaluation "fell through the cracks.") In July 2010 the school district renewed Koehn's contract for the 2010–2011 school year, apparently without qualification. That September, after the start of classes, Koehn discovered that Principal Segersten had ordered cuts in individualized instruction for some special education students at the junior high. Around September 10, Segersten called Koehn to a meeting to discuss those cuts. Koehn voiced concern that Segersten had violated federal and state law by reducing the amount of individualized instruction. Koehn thought those cuts had been made without adequately involving parents and the team of professionals responsible for developing Individualized Education Programs.

Four weeks later, on October 7, Principal Segersten wrote Koehn directing him to attend an "investigatory meeting" on October 12 to discuss "job performance" and "conduct" deficiencies. In her letter Segersten accused Koehn of not providing and documenting special education services. She also accused him of disregarding District 50 policies concerning attendance and Internet usage. Her letter warned that he could face discipline, including discharge. Koehn replied by e-mail that he would not attend without his choice of representative. Koehn asserted in his e-mail that Segersten was trying to bully him into accepting her decisions without exercising independent professional judgment, and he called the timing of her letter—"about the day after" he and some parents had discussed the junior high's "lack of interventions" in math and reading—an "interesting coincidence."

Koehn did not attend the October 12 meeting. Two days later Principal Segersten wrote again rescheduling the session and warning that Koehn could not "dictate" terms or "set conditions." Koehn replied on October 15 with a sharply worded e-mail demanding documentation that Segersten was authorized to discipline, or even supervise, him. Segersten did not answer this demand. At summary judgment the defendants did not dispute Koehn's assertion, citing his job description, that Superintendent Tobias, not Segersten, would have been his direct supervisor at this time (a role she would have assumed after becoming superintendent more than two years before). Nor did the defendants submit any evidence that Segersten's position as

principal of the junior high imparted authority to convene an "investigatory meeting" about Koehn's performance as a psychologist with district-wide responsibilities.

After receiving Principal Segersten's second letter, Koehn shared his concerns about cutting individualized instruction with a "Principal Education Consultant" employed by the Illinois State Board of Education. Koehn copied Superintendent Tobias on this communication. Tobias had received a copy of Segersten's first letter commanding Koehn to attend an "investigatory meeting," but at summary judgment the defendants did not introduce evidence that Tobias knew about or approved in advance Segersten's plan for this meeting. On October 18 the superintendent directed Koehn to meet with Segersten and said his e-mails to Segersten had been vitriolic and unprofessional.

That meeting occurred on October 20, and Superintendent Tobias also attended. Eight days later Tobias notified Koehn that she had investigated the reductions in individualized instruction at the junior high but found no impropriety. Days later, on November 2, Principal Segersten recommended that the school board issue Koehn a notice of remedial warning for "unprofessional and insubordinate conduct." Segersten's recommendation prompted Koehn to send an e-mail on November 3 to every District 50 board member and employee accusing her of trying to "besmirch" his professional reputation and retaliating because he had shared with the Illinois State Board of Education his "serious allegations about her conduct as it relates to special education rights of many students and their parents." The school board approved Segersten's recommendation. Koehn was warned to communicate with administrators and staff in a "professional, respectful and appropriate manner," to report his absences promptly, and to modify the way he completed written evaluations of students in special education.

Koehn did not relent about Principal Segersten's revisions to special education programming at the junior high, and during November and December 2010 he continued rallying support to reverse those changes. In mid-November he spoke out at a meeting attended not only by District 50 special education staff but also the Principal Education Consultant he had contacted at the Illinois State Board of Education in October. At work Koehn also reviewed confidential student files and wrote letters and e-mails to Segersten and the school board.

Later that month Segersten accused Koehn of not properly reporting his absences and told him not to use work resources to further his effort at overturning her changes. Then a week later, on December 7, Superintendent Tobias instructed Koehn to attend a

second investigatory meeting with her and Segersten. That meeting was rescheduled 13 times because, by the defendants' admission, Koehn was ill and missed almost three weeks of school. The meeting eventually occurred on January 18, 2011.

Six days later Superintendent Tobias recommended that the school board fire Koehn. As reasons she cited concerns about Koehn's observations and written psychological reports for three special education students and his access of confidential records for five other special education students. Tobias further asserted that Koehn had engaged in "inappropriate communications," including asking questions "designed to attack Ms. Segersten's decisions" when the Principal Education Consultant from the state met with District 50 special education staff in November 2010. Tobias also singled out an e-mail that Koehn had sent District 50 board members alerting them—in Tobias's words—"to a case law update about school officials who disregard constitutional rights." Finally, Tobias accused Koehn of failing to appear numerous times for the meeting ultimately held on January 18, as well as twice using the wrong procedure in November 2010 to call in sick. Koehn was invited to appear before the board and to address those charges in a closed session. He declined, thinking that any defense would be futile. On January 31 the board met and voted to discharge Koehn, giving the same reasons underlying Tobias's recommendation. Koehn filed but then withdrew an administrative appeal.

In granting summary judgment for Superintendent Tobias, Principal Segersten, and the members of the school board, the district court first concluded that Koehn's own actions disproved his claim that he was denied procedural due process in connection with the loss of his job. The court reasoned that Koehn had been invited to defend himself at a meeting of the District 50 school board but chose not to do so. On the First Amendment claim, the district court agreed with Koehn that a jury could find at least some protected speech on this record, particularly in light of his effort to involve an employee of the Illinois State Board of Education, who was outside his chain of command. On this subject the court rejected the defendants' argument that Koehn had spoken only as a school psychologist discharging his official duties and never as a private citizen. But, the court continued, Koehn did not provide enough evidence for a jury to reasonably conclude that his speech motivated the defendants to fire him. And, the court added, the defendants provided convincing evidence that they would have terminated Koehn's employment for reasons separate from his protected speech.

On appeal Koehn first argues that the district court improperly dismissed his First Amendment retaliation claim. To avoid summary judgment on his claim for

retaliation, Koehn had to offer evidence that he suffered a deprivation because of constitutionally protected speech. See *Diadenko v. Folino*, 741 F.3d 751, 755 (7th Cir. 2013). Advocating for special education students was a principal part of Koehn's job, so the district court was faced with deciding if Koehn's evidence would permit finding that he spoke out, at least in some instances, as a private citizen about a matter of public concern. See *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006) (holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline"); *Davis v. Cook County*, 534 F.3d 650, 653 (7th Cir. 2008) (same). The court answered that question affirmatively, and the defendants, by leaving this conclusion unchallenged on appeal, have abandoned for purposes of this appeal their contention that Koehn did not engage in protected speech. See *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 174 (7th Cir. 1996) ("An appellee is not required to advance every possible ground for affirmance; and should the case be remanded it can advance the additional grounds in the district court, provided they have not been waived in that court."). Thus our focus here is causation.

Koehn's initial burden was to offer evidence that his protected activity motivated the defendants' decision to fire him. See *Diadenko*, 741 F.3d at 756. He argues that he presented a "convincing mosaic" of circumstantial evidence sufficient to satisfy this burden. See *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 637, 643 (7th Cir. 2013); *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). We agree.

Considering the evidence as a whole and drawing all reasonable inferences in Koehn's favor, see *Hobgood*, 731 F.3d at 644, 647, a jury could find that Superintendent Tobias and Principal Segersten were content to let Koehn's alleged deficiencies "fall through the cracks" until he began speaking up about the propriety of Segersten's changes to the special education program. No one from District 50 disciplined Koehn or even formally evaluated his performance from April 2008 until soon after his first allegations of illegality in September 2010. See *Diadenko*, 741 F.3d at 756 (explaining that adverse actions that "follow 'close on the heels' of protected speech can give rise to an inference of retaliation"); *Johnson v. City of Fort Wayne*, 91 F.3d 922, 939 (7th Cir. 1996) (concluding that inference of retaliation arose when adverse action occurred two weeks after protected activity); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (describing as "surprising" that problems with plaintiff's performance "suddenly" surfaced after protected activity).

Moreover, a jury might reasonably be skeptical about Superintendent Tobias's reasons for wanting Koehn fired. See *Hobgood*, 731 F.3d at 643–44 (explaining that evidence of pretext can be circumstantial evidence of retaliatory motive). For one thing, Tobias's recommendation to the school board only thinly veils her displeasure with Koehn's meddling. Chief among her accusations is that Koehn asked "inappropriate" questions "designed to attack" Principal Segersten's program cuts during a meeting with District 50 special education staff and an interested official from the state education board—a gathering of professionals where the topic of those cuts surely was relevant. Tobias also insisted that Koehn had no "legitimate educational interest" in reviewing records of certain special education students, but that accusation is never explained. What Tobias apparently suspected, and what Koehn appears to concede, is that he examined some student files while trying to build a case that Segersten's changes were detrimental to the affected students. The defendants did not dispute that Koehn's position as school psychologist required him to serve these students like all others, and it seems an odd accusation to call his inquiry illegitimate simply because it might undermine Segersten's unilateral changes. Other reasons given by Tobias also ring hollow. She asserted that Koehn had not offered a "reasonable excuse" justifying multiple postponements of the "investigatory meeting" held on January 18, 2011, yet the defendants concede that Koehn was unavailable because of an extended "illness" (which they deride as "just stress"). Similarly, Tobias cited Koehn for twice using e-mail instead of a computerized attendance program to report absences from work. And some of her criticisms of Koehn's report writing (e.g., not using a child's "legal" name in the heading, placing "background information" at the beginning of the report, and not defining acronyms) seem trivial, especially since Koehn presented evidence that Principal Segersten had refused his requests for examples of properly completed psychological reports.

In many cases, evidence that would permit a jury reasonably to find that protected speech motivated adverse action would not, as Koehn asserts, end the inquiry at summary judgment. A defendant might introduce evidence of non-pretextual reasons that would have led to the same adverse action even if the plaintiff had not engaged in protected speech. See *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 285–87 (1977); *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012); *Diadenko*, 741 F.3d at 756. But the plaintiff must then be given an opportunity to present evidence that the proffered reasons for the adverse action were pretextual and that the real reason was retaliatory animus. See *Thayer*, 705 F.3d at 252. Here Koehn did not need further evidence that the defendants' stated reasons for firing him actually were cover for a retaliatory motive. See *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 673 (7th Cir. 2009). The

timing of District 50's sudden preoccupation with Koehn's job performance, many months after he was due to be evaluated, is "too convenient" to allow summary judgment on his First Amendment retaliation claim. See *id.* at 673–74; see also *Peele v. Burch*, 722 F.3d 956, 962 (7th Cir. 2013) ("Our role at this stage is to decide if there is a factual dispute, not which side of the dispute is right.").

On the other hand, Koehn is on much weaker footing in contesting summary judgment for the defendants on his claim that he was fired in violation of his Fourteenth Amendment right to procedural due process. He asserts that the members of the school board demonstrated they were biased when they accepted Superintendent Tobias's recommendation for dismissal in the face of evidence that she and Principal Segersten were retaliating against him and violating "special education rules." The defendants concede that Koehn, as a tenured employee, had a protected property interest in his position. See *Townsend v. Vallas*, 256 F.3d 661, 673 (7th Cir. 2001); *Gleason v. Board of Educ. of City of Chicago*, 792 F.2d 76, 79 (7th Cir. 1986). The question for us is whether the undisputed evidence establishes that Koehn received a fair hearing conducted by an impartial decision-maker. See *Head v. Chicago Sch. Reform Bd. of Trs.*, 225 F.3d 794, 803–04 (7th Cir. 2000).

Adjudicators are presumed to act in an unbiased manner. *Id.* at 804. To overcome this presumption, Koehn needed to provide "substantial evidence of actual or potential bias," such as evidence that the board members had prejudged his case, had a personal animus against him, or had a pecuniary interest in the outcome of the proceedings. *Id.*; *Hostrop v. Bd. of Jr. Coll. Dist. No. 515*, 523 F.2d 569, 575–76 (7th Cir. 1975). Koehn has presented no evidence of this sort.

Koehn also contends, as he did in the district court, that before he was fired he should have been given all of the materials reviewed by Superintendent Tobias in concluding that the cuts to individualized instruction were made lawfully. According to Koehn, these materials would have strengthened his position before the school board. But Koehn misses the point: He passed over the opportunity to address the school board, and his failure to take advantage of either the pre-deprivation or post-deprivation procedures available to him forecloses his challenging those procedures as deficient. See *Leavell v. Illinois Dep't of Natural Resources*, 600 F.3d 798, 806 (7th Cir. 2010); *Hudson v. City of Chicago*, 374 F.3d 554, 563 (7th Cir. 2004).

We have considered and rejected Koehn's remaining contentions. Accordingly, we VACATE the grant of summary judgment on his First Amendment claim and REMAND

for further proceedings on that claim. In all other respects we AFFIRM the district court's judgment.